ROBERT M. MURPHY, Judge.
12PIaintiffs-appelIants, Gia Schumck and Louis G.B. Dumser, III (“the Dumsers”), appeal the trial court’s November 29, 2012 judgment dismissing their petition for red-hibition, breach of contract and negligence against defendants-appellees, Martha Me-nees and Merrill P. Kardon (“the Kar-dons”), after a bench trial on the merits. For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
On April 25, 2003, the Dumsers filed a petition, asserting claims of redhibition, breach of contract and negligence, against the Kardons, Professional Home Inspection, and Guy Misuraca, arising out of their purchase of a home from the Kar-dons on December 10, 2002. Prior to the act of sale, the Dumsers hired Professional Home Inspection to perform an inspection of the home. The home was inspected on November 14, 2002 by Misuraca, a certified inspector employed by Professional Home Inspection. In his inspection report, Misuraca noted that the |3home had average signs of settlement, and that there were cracks in the foundation and in the concrete floors.
Subsequently, the Dumsers agreed to purchase the home from the Kardons. The Dumsers executed a Purchase Agreement and an Act of Sale, both of which contained an “as is/where is” clause, or a waiver of redhibition. The “as is/where is” clause in the Act of Sale provides as follows:
That Purchasers or their representatives have fully examined and inspected the entire building which comprise [sic] the premises prior to the execution of this Act of Sale, and that Purchasers know and are satisfied with the physical condition of the premises in all respects, including but not limited to any visible or hidden termite infestation and resultant damage therefrom, and that same is acceptable to Purchasers “AS IS” and that Purchasers agree that no representation [sic], statements, or warranties have at any time been made by Sellers, or its agents, as to the physical condition or state of repair of the premises in any respect, and that the purchase price takes into consideration the condition of the premises.
Sellers and Purchasers hereby acknowledge and recognize that this sale is in an “AS IS” condition, and accordingly, Purchasers do hereby relieve and release Sellers and all previous owners thereof from any and all claims for any vices or defects in said property, whether obvious or latent, known or unknown, easily discoverable or hidden, and particularly for any claim or cause of action for redhibition pursuant to Louisiana Civil *279 Code Articles 2520 et seq. or for diminution of purchase price pursuant to Louisiana Civil Code Articles 2541, et seq.
Shortly after purchasing the home, the Dumsers allege that they noticed a significant slope to the home’s concrete slab. Specifically, the Dumsers claim that the slope caused doors of the home to swing open and objects to roll off tables and countertops. The Dumsers also began experiencing other problems consisting of overflowing toilets, raw sewage odors, mosquitoes and sewer flies, and flooding during storms. As a result, the Dumsers hired two structural engineers, Robert Anderson and Michael Gurtler, to inspect their home and determine whether there was any differential settlement of the slab. Both Anderson and Gurtler concluded that the home had a differential settlement of slightly over twelve inches, which Uthey opined was significantly greater than the average settlement for homes in the area. Gurtler further concluded that the plumbing and drainage issues were related to the home’s differential settlement.
Accordingly, the Dumsers filed suit against the Kardons seeking a rescission of the sale, or alternatively, a reduction in the purchase price based upon the existence of two alleged redhibitory defects: (1) the differential settlement of the concrete slab; and (2) the plumbing, drainage and flooding problems. The Dumsers also asserted negligence claims against Misuraca and Professional Home Inspection, based upon Misuraca’s failure to detect the alleged redhibitory defects in his inspection of the home. However, prior to trial, the Dum-sers dismissed all of their claims against Professional Home Inspection, Misuraca, and National Union Fire Insurance Company of Pittsburgh[1] (the insurer of Professional Home Inspection and Misuraca), after they settled their claims against those defendants for $71,000. As a result, the Kardons were the only remaining defendants at the time of trial.
The matter proceeded to a bench trial on August 28, 2012. At the outset of trial, the Dumsers’ attorney stipulated that the Dumsers were not seeking any compensatory damages against the Kardons because their settlement with the other three defendants fully satisfied the amount of their claimed damages related to the redhibitory defects alleged in their petition. As a result, the Dumsers pursued their claim against the Kardons for reduction of the purchase price, but only as a means of maintaining their claim for attorney’s fees and expert costs, upon the trial court’s finding of bad faith on the part of the Kardons.
At trial, Mrs. Dumser testified that she walked through the house twice before entering into the Act of Sale. She was aware that Misuraca indicated in his | ¡¡inspection report that the home had “average” signs of settlement, but she did not inquire further as to this aspect of his report because she assumed that “average” settlement meant that it was within the normal range for the area. Mrs. Dum-ser testified that she first learned of the house’s slope when her father and brother-in-law pointed it out to her as they were moving furniture into the house. Specifically, Mrs. Dumser noted that the doors of the home would swing open, objects would roll off the tables and countertops, and that door stops were placed all throughout the house prior to their purchase. Shortly after purchasing the home, Mrs. Dumser also noticed the presence of sewer flies in the bathrooms and that the plumbing system frequently baeked up.
*280 The Dumsers called Anderson and Gurtler to offer expert testimony at trial regarding the nature of the alleged redhi-bitory defects. Anderson testified as an expert in the field of engineering, and Gurtler testified as an expert in the fields of engineering, home inspection and general contracting. Anderson testified that the home’s concrete slab had a differential settlement of slightly over twelve inches, and he opined that it was unlikely that the Kardons were unaware of this differential settlement given that they lived in the home for twenty-five years. Gurtler similarly testified regarding the significant nature of the home’s differential settlement. He concluded that a differential settlement of over twelve inches is considered abnormal for the area, and that it was highly likely that anyone living in the home for a significant period of time would have noticed the differential settlement and the plumbing issues.
However, both Mr. and Mrs. Kardon testified that they had no knowledge of the alleged redhibitory defects prior to the sale of the home to the Dumsers. Specifically, they testified that they never experienced any doors of the home swinging open, items rolling off the tables or coun-tertops of the home, or any |r,plumbing problems. Mrs. Dumser testified that they did not experience any other signs that might have put them on notice of the home’s differential settlement. She explained that because they lived in the home for so long, any settlement of the home must have occurred gradually over time.
After the trial concluded, the trial court rendered judgment on November 29, 2012, dismissing the Dumsers’ claims with prejudice. The trial court specifically held that the parties signed a valid waiver of all of redhibition claims in the Act of Sale, and that it found no evidence of fraud on the part of the Kardons. The Dumsers now appeal.
ASSIGNMENTS OF ERROR
The Dumsers raise the following assignments of error on appeal:
1. The trial court erred in finding that the Kardons had no knowledge of defects in home sold to the Dum-sers; and,
2. The trial court erred in failing to find, as a matter of law, that the Kardons were manufacturers of their home.
STANDARD OF REVIEW
A trial court’s factual findings will not be upset unless they are manifestly erroneous or clearly wrong. Foley v. Entergy Louisiana, Inc., 06-983 (La.11/29/06), 946 So.2d 144, 153 (citing Ferrell v. Fireman’s Fund Insurance Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745). “Under this rule, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one.” Foley, supra. “If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id.
When the findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to 17the findings of fact, for only the fact finder is cognizant of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Johnson v. Lee, 10-439 (La.App. 5 Cir. 11/23/10), 54 So.3d 704, 706. The rule that questions of credibility are for the trier of fact applies equally to the *281 evaluation of expert testimony. Id. (citing Lasyone v. Kansas City Southern Railroad, 00-2628 (La.4/3/01), 786 So.2d 682, 693).
LAW AND DISCUSSION
In their first assignment of error, the Dumsers contend that the trial court’s finding that the Kardons had no knowledge of the redhibitory defects alleged in the petition at the time of the sale, and therefore, were not in bad faith, was manifestly erroneous. As a result, the Dum-sers contend that the waiver of redhibition contained in the Act of Sale is of no effect.
Article 2520 of the Louisiana Civil Code provides that “[t]he seller warrants the buyer against redhibitory defects, or vices, in the thing sold,” and further defines the term “redhibitory” as a defect which “renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect.” La. C.C. art. 2520. Redhibition is the right of a buyer to obtain rescission of the sale when the thing sold has defects that render it useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. Guedry v. Vitenas, 08-758 (La.App. 5 Cir. 4/28/09), 12 So.3d 396, 399, writ denied, 09-1347 (La.9/25/09), 18 So.3d 69; citing La.C.C. art. 2520. Alternatively, the buyer may be limited to a reduction of the purchase price when the defect does not render the thing totally useless, but diminishes its usefulness or value so that it must be presumed a buyer would still have bought it but for a lesser price. Id. The seller owes no warranty for defects in the thing that were known to the buyer at the time 18of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things. La. C.C. art. 2521.
Under La. C.C. art. 2548, parties to a sale are allowed to agree to exclude or limit the warranty against redhibitory defects. However, a buyer is not bound by an otherwise effective exclusion or limitation of the warranty when the seller has declared that the thing has a quality that he knew it did not have. Id. In other words, “[a] seller with knowledge of a red-hibitory defect, who, rather than informing the buyer of the defect opts to obtain a waiver of the warranty implied by law, commits fraud, which vitiates the waiver because it is not made in good faith.” Frey v. Walker, 01-709 (La.App. 5 Cir. 12/26/01), 807 So.2d 887, 893, writ denied, 02-0258 (La.4/19/02), 813 So.2d 1082. A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. La. C.C. art. 2545.
In Frey v. Walker, supra, this Court affirmed the trial court’s finding that the parties’ waiver of redhibition signed in connection with the purchase of a home was vitiated, where it was shown that the defendants-sellers had knowledge of the redhibitory defects prior to the sale. The trial court found that the defendants-sellers concealed defects in the home’s foundation from the plaintiffs-buyers by cosmetic repair, and further obtained a waiver of redhibition to escape liability. Specifically, the trial court concluded that the defendants-sellers used a “Floor Patch” to make the floor level where the slope was most apparent and then covered the patch work with carpet and linoleum. We held that the defendants-sellers’ I «concealment of de *282 fects was sufficient to vitiate the waiver of redhibition made by the plaintiffs-buyers, and affirmed the trial court’s grant of summary judgment in favor of the plaintiffs-buyers.
In the instant case, the Dumsers contend that the trial court erred in finding that the Kardons had no knowledge of the redhibitory defects at issue because both of their experts, Anderson and Gurtler, testified that it was highly unlikely that the Kardons would not have been aware of them prior to the sale. However, both Mr. and Mrs. Kardon testified emphatically that they had no knowledge of either defect—the differential settlement or the plumbing issues—prior to the sale. The Kardons contend that the Dumsers validly waived any and all claims for redhibitory vices and defects by executing the waiver of redhibition at the time of sale. Unlike in the Frey case, there is no evidence indicating that the Kardons were ever put on notice of any defects in the home prior to the sale, or that they attempted to conceal any defects from the Dumsers. We find that the evidence and testimony simply failed to establish that the Kardons knew of the differential settlement of the house or its plumbing issues prior to the sale. Accordingly, we find no manifest error in the trial court’s finding that the Dumsers validly waived all redhibition claims, and that there was no evidence of bad faith or fraud on the part of the Kardons. This assignment of error is without merit.
In their second assignment of error, the Dumsers contend that the trial court erred in failing to find that the Kar-dons were manufacturers of the home, and therefore, are presumed to have knowledge of any redhibitory defects. As an initial matter, we note that our review of the record shows that the Dumsers never raised this issue in any pleading before the trial court in advance of trial. The issue makes its first appearance in the Dumsers post-trial memorandum. Because we |incannot discern whether the trial court considered this issue in rendering its judgment, we will address it on the merits.
If an action in redhibition is brought against the builder/manufacturer of a residence, it is presumed that he has knowledge of any defects in the residence. Carlisle v. Prieur, 95-0658 (La.App. 4 Cir. 2/15/96), 669 So.2d 1295, 1298; La. C.C. art. 2545. The Dumsers claim that they produced evidence at trial that the Kar-dons were manufacturers of the house. Specifically, they contend that Mr. Kardon admitted to building the house. However, after reviewing the record, we find that there is no evidence establishing that the Kardons were manufacturers of the home. Contrary to the Dumsers’ assertions, when asked whether he built the house himself, Mr. Kardon testified that he and his wife hired a builder, Mayeaux Construction, to build their home. He further testified that the builder hired subcontractors to install the sheetrock, roofing, plumbing, electrical work, and heating and air. The builder oversaw the construction and the architectural plans and specifications were professionally done by an architect.
Although Mr. Kardon did testify that he acted as his own general contractor with respect to the construction of the home, in light of the foregoing, this testimony is insufficient to make Mr. Kardon a manufacturer of the home for purposes of La C.C. art. 2545. Mr. Kardon testified that he referred to himself as a general contractor because “he was able to select a builder.” We find that the evidence admitted at trial shows that Mr. Kardon’s involvement with the construction of the home did not extend beyond hiring the builder, Mayeaux Construction, who then was in charge of performing and supervis *283 ing the construction of the home. Moreover, we note that the “mere designation of defendant’s name as contractor on the building permit is insufficient to show that defendant was the contractor.” Carlisle, supra.
lnTherefore, we find that the Dumsers have failed to establish that the Kardons were manufacturers of the home. Accordingly, we find that the trial court was not manifestly erroneous in failing to find that the Kardons were manufacturers of the home. This assignment of error is without merit.
CONCLUSION
After reviewing the record in its entirety, we find that the trial court’s findings were reasonable and not clearly wrong. Accordingly, for the reasons stated herein, the judgment in favor of the Kardons dismissing the Dumsers’ claims with prejudice, is affirmed. Each party shall bear their own costs for this appeal.

AFFIRMED.

. The Dumsers filed an amended petition on April 5, 2006, naming National Union Fire Insurance Company of Pittsburgh, PA as an additional defendant.