MARC E. JOHNSON, Judge.
|2In this redhibition case, Defendants/sellers, Gene Dongieux, Sr. and Rhonda Dongieux, appeal a judgment finding them liable to Plaintiffs/purchasers, William Newton and Elaine Newton, for damages in the amount of $50,815.00 and attorney’s fees in the amount of $42,182.50, plus court costs and judicial interest. For the reasons that follow, we reverse.

FACTS & PROCEDURAL HISTORY

Plaintiffs, the Newtons, filed a petition for damages on October 9, 2007 seeking damages in redhibition and breach of contract. They alleged that Defendants, the Dongieuxes,[1] failed to disclose the extent of flooding around the pool and failed to disclose that the carport area flooded. The Newtons further alleged that the Don-gieuxes failed to complete the agreed upon repairs prior to the |sNewtons taking possession of the property. The Newtons sought redhibitory damages, specific performance for the terms of the contract, and attorney’s fees.[2]
The matter proceeded to a bench trial on March 25, 2013. The record shows that *480 in December 2006, Mrs. Newton was on a Christmas tour of homes in River Ridge when she fell in love with the home at 228 Garden Rd., owned by the Dongieuxes. Although the house was not for sale, Mrs. Newton expressed her desire to purchase the home to Ms. Dongieux. After several conversations, the Dongieuxes indicated they would sell the home for $1.4 million. Without any negotiations, the Newtons agreed to purchase the home for the requested price.
On February 5, 2007, the parties executed a property disclosure. On the property disclosure form, the Dongieuxes checked yes to question number four under “Section 1: Land,” which asked, “Has any flooding, water intrusion, accumulation, or drainage problem been experienced with respect to the land? If yes, indicate the nature and frequency of the defect at the end of this section.” The Dongieuxes explained on the form that “during a very hard rain, the backyard ponds water. Drains quickly.” Under “Section 3: Structure,” the Dongieuxes answered no to question 12, which asked, “Has any structure on the property ever taken water by flooding (rising water or otherwise)?”
At some point after signing the property disclosure form and prior to the Act of Sale, Mrs. Newton asked Ms. Dongieux about the “ponding” problem. According to Mrs. Newton, Ms. Dongieux explained that when it rained hard, a puddle formed where the sidewalks meet in the backyard by the pool. Ms. Dongieux testified that she gave Mrs. Newton the example of when she was having a birthday party for a friend and it rained before the party. Ms. Dongieux explained to Mrs. Newton that it stopped raining two hours before the party, during Rwhich time the water drained but left a puddle where the sidewalks crossed. Ms. Dongieux indicated that she was able to soak up the remaining puddle with a beach towel. Mrs. Newton testified that she was satisfied with this answer and did not obtain a specific inspection regarding the ponding or drainage in the backyard. Mr. Newton likewise stated that he was satisfied with the explanation, as relayed by his wife after she spoke with Ms. Dongieux, and did not seek a specific inspection regarding the ponding issue.
On February 15 and 16, 2007, the parties executed an agreement to purchase or sell. The agreement contained a waiver of redhibition clause that indicated the property was to be sold “AS IS” with a full waiver of redhibition of rights as explained in an attached addendum, which was also signed by all parties.
On February 21, 2007, the Newtons had the property inspected by Robyn Borde-lon, a licensed home inspector with House Call Home Inspection. Ms. Bordelon testified that she was not hired to inspect any issues regarding any flooding or ponding in the backyard, but rather her inspection was limited to the area directly around the foundation of the home and cabana area.
Also, on February 23, 2007, the Newtons had the pool inspected by Kevin Brouphy. Mr. Brouphy testified that he inspected the decking of the pool, the surface of the pool and the pool equipment. He stated that he noted a few things, but nothing exorbitant. He explained that he did not inspect the elevation of the pool or the grading around the pool and was not qualified to give an opinion about the elevation or grading.
The parties proceeded to the Act of Sale on April 30, 2007. The Act of Sale contained an express waiver of redhibition, which the Newtons acknowledged by signing immediately beneath the waiver clause. Although the Act of Sale occurred in April, the Newtons did not move into the house until after the end of June | ¡¡because of an *481 agreement between the parties that allowed the Dongieuxes to stay in the home until then.
The Newtons testified that on the day they received the keys to the property, it started raining and the backyard flooded. They explained that water drained into the pool and the carport behind the cabana flooded. They subsequently learned that the pool was eight to nine inches below the surrounding ground, so the water drained into the pool during a hard rain. In an attempt to alleviate the pool problem, the Newtons explored installing drainage, but discovered subsurface drains already existed. The Newtons ultimately had to raise the pool eight or nine inches, at a cost of $45,065.00.
To fix the carport flooding, the Newtons had to raise the slab approximately two and a half to three inches, at a cost of $4,600.00. While raising the slab, the Newtons learned that the stairs in the carport that led to the upstairs apartment were rotted from water exposure and had to be fixed. Since this remedial work, the Newtons have not experienced any flooding in the carport.
At the conclusion of trial, the trial court took the matter under advisement. It issued a written judgment on May 16, 2013 in favor of the Newtons for their redhibition claim, but denied their breach of contract claim. The trial court awarded $50,815.00 in damages, which included $1,150.00 for pool cleaning, $45,065.00 for raising the pool, and $4,600.00 for leveling the carport slab. It also awarded the Newtons attorney’s fees in the amount of $84,398.50. Thereafter, the Newtons filed a motion to modify judgment (seeking an increase in attorney’s fees), tax costs and assess judicial interest. On June 26, 2013, the trial court granted the motion and increased attorney’s fees to $42,182.50, taxed costs in the amount of $4,099.44, and awarded judicial interest. The Dongieux-es appeal the | (judgment finding them liable for redhibition and the amount awarded for attorney’s fees.

ISSUES

The Dongieuxes raise three issues on appeal: (1) the trial court erred in finding the property contained a redhibitory defect; (2) the trial court erred in determining the Dongieuxes were manufacturers of the property so as to apply a presumption of knowledge of any defects for purposes of redhibition; and (3) the trial court erred in awarding attorney’s fees because the Dongieuxes were not bad faith sellers, or alternatively the amount of attorney’s fees awarded was excessive.

DISCUSSION

Redhibition

The Dongieuxes argue that the trial court erred in finding the property’s propensity to flood was a hidden defect for purposes of redhibition because they disclosed the flooding problem to the Newtons prior to the sale of the home. As such, the Dongieuxes contend that the Newtons were on notice of the flooding issue and had an obligation to further investigate. Additionally, the Dongieuxes maintain the elevation of the backyard and pool was open and obvious, not hidden; thus, it could not be a redhibitory defect.
The Dongieuxes also argue that they were not manufacturers of their home and, thus, the presumption of knowledge under La. C.C. art. 2545 does not apply. They maintain they hired a contractor, a construction company, an architect and a pool company to design and construct the home and pool. The Dongieuxes further contend they do not have any specialized construction knowledge that would allow the presumption to apply. The Dongieuxes *482 contend the trial court erred in relying on a pre-trial stipulation that they were general contractors when the trial evidence was clearly to the contrary. They further assert that neither party relied on the |7stipulation and both parties, without objection, elicited testimony showing the Dongieuxes were not the general contractors of the home.
In its reasons for judgment, the trial court determined the Dongieuxes were manufacturers of the home based on the parties’ pre-trial stipulation in their joint pre-trial order that the Dongieuxes served as the general contractors for the construction of the property. After making this determination, the trial court found the Dongieuxes were presumed to know of any defect in the property under La. C.C. art. 2545. The trial court then determined the Newtons’ waiver of redhibition was void because a manufacturer who is presumed to know of the defects in the thing he sells can never be in good faith if a defect exists. Thereafter, the trial court found the flooding defect in the yard and carport existed at the time of the act of sale and, therefore, the Dongieuxes were liable in redhibition.
A trial court’s factual findings will not be upset unless they are manifestly erroneous or clearly wrong. Dumser v. Kardon, 13-557 (La.App. 5 Cir. 12/12/13); 131 So.3d 277, 280. In order to reverse a factfinder’s determinations, an appellate court must find a reasonable factual basis does not exist for the factual finding and that the record shows the factual finding is clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). The issue is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was reasonable in light of the record. Id. If an appellate court finds manifest error, it is required to determine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840, 844, n. 2 (La.1989).
We find the trial court was manifestly erroneous in finding the Dongieuxes were manufacturers of the home for purposes of La. C.C. art. 2545. Article 2545 |sprovides that “[a] seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.”
In the parties’ joint pre-trial order, under the heading “Pretrial Stipulations,” the parties stated: “Defendants served as the general contractors for the construction of the Garden Road home, which was built in or around 2000.” The trial court concluded that being a general contractor was equivalent to being a manufacturer of the home for purposes of Article 2545. The facts of this case do not reasonably support the trial court’s conclusion.
In Dumser v. Kardon, supra, this Court found that the sellers were not manufacturers of the home for purposes of Article 2545 even though the seller admitted “building” the house. The record showed that the sellers hired a builder to build their home and that the builder hired subcontractors and oversaw the construction. Additionally, the plans and specifications were prepared by an architect. This Court concluded that although the seller testified he acted as his own general contractor, the facts were insufficient to show he was the manufacturer of the home.
Additionally, in Lee v. Kendrick, 532 So.2d 335 (La.App. 3rd Cir.1988), the court determined that the seller did not manufacture the camp despite claims by the buyer that the seller acted as the general contractor for the construction of the camp. The court found no evidence that the seller had any knowledge of engineering or construction. Additionally, the seller found the plans for the camp in a magazine. Although the seller modified *483 the plans, he submitted them to a professional for finalization. The seller hired workers to lay the foundation, build the frame and lay the bricks, but did not supervise the workers. The court ultimately concluded that the sellers did not effectively act as a general contractor and, thus, were not imputed with knowledge of any defects.
|;)The mere label of “general contractor” is not equivalent to “manufacturer” under Article 2545. However, if a vendor-builder has any type of engineering or construction knowledge or is in the business of building or developing homes for sale, it is more likely that he will be considered a manufacturer. (See Pickron v. Krebs, 441 So.2d 272, 274 (La.App. 5th Cir.1983), writ denied, 442 So.2d 481 (La.1983), where this Court held that “a person with engineering and construction knowledge who plans, designs and personally supervises the building of an addition to a residence is presumed to be aware of any structural defect, and the lack of knowledge regarding any structural defect is imputed to him”)
In the instant case, there is nothing in the record to support a finding that the Dongieuxes were manufacturers of the house. Dr. Dongieux has been an orthodontist for 44 years and Ms. Dongieux owns a T-shirt company, with previous employment in sales and interior design. The Dongieuxes hired an architect and a construction company, C & G Construction, to build the home. The contractor and subcontractors were overseen by Dr. Dongieux’s son, Glenn, who owns several construction companies. The record is completely devoid of any facts to show that the Dongieuxes possessed the requisite construction knowledge to effectively act as general contractors in the building of their home so as to be manufacturers of their home for purposes of Article 2545. Thus, we find the trial court was manifestly erroneous in finding the Dongieuxes to be manufacturers of the house.
We further find the trial court erred in finding that the backyard flooding was a redhibitory defect. While a property’s susceptibility to flooding can be a redhibi-tory defect based on certain facts and circumstances,[3] the facts show it is not | mredhibitory in this case because the defect was known to the Newtons at the time they purchased the property.
A seller warrants the buyer against red-hibitory defects in the' thing sold. La. C.C. art. 2520. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect, or else of such diminished usefulness and value that the buyer would only have purchased the thing for a lesser price. Id.
A seller owes no warranty for defects that were known to the buyer at the time of the sale or that should have been discovered by a reasonably prudent buyer. La. C.C. art. 2521. A buyer is under a duty to make an inspection that is reasonable in light of all the circumstances surrounding the sale. Ollis v. Miller, 39,087 (La.App. 2 Cir. 10/29/04); 886 So.2d 1199, 1203.
In Nicholson v. Ellerbe, 434 So.2d 1146, 1148 (La.App. 1st Cir.1983), the court found that the property’s susceptibility to flooding was not a redhibitory defect when the party negotiating the sale on behalf of the buyer had been informed by the seller *484 that the property was prone to flooding. The court further concluded that the tendency of the property to flood was not only known to the buyer, but also was discoverable by simple inspection; thus, it was not a redhibitory defect under La. C.C. art. 2521.
In the present case, the record shows that the Dongieuxes disclosed the backyard flooding issue to the Newtons. Specifically, the property disclosure form asked, “Has any flooding, water intrusion, accumulation, or drainage problem been experienced with respect to the land?” and the Dongieuxes answered yes. In further explanation, the Dongieuxes noted on the form that “during a very hard rain, the backyard ponds water. Drains quickly.” This disclosure, signed by all parties in February 2007, put the Newtons on notice of a problem. Despite Inknowing of the problem, the Newtons purchased the property and waived redhibition.
The Newtons claim the Dongieuxes misrepresented the extent of the flooding issue and, thus, they never had full knowledge of the problem. The Newtons assert Ms. Dongieux’s comment about being able to soak up the water with a beach towel misled them into thinking there was no real flooding issue.
We find that once the Dongieuxes disclosed the fact that the property had experienced flooding/water intrusion/accumulation/drainage problems, it was incumbent upon the Newtons, as purchasers, to act as reasonably prudent buyers and to further investigate the flooding issue. At the time the Newtons signed the property disclosure form, they were aware of a potential flooding defect and had not sought further explanation from the Dongieuxes. While the Newtons subsequently sought explanation from the Dongieuxes, it is unclear whether this was done before or after the Newtons had the property inspected. Nonetheless, the Newtons testified that they did not seek a specific inspection regarding the flooding issue or elevation of the property despite knowing of a potential flooding defect.
We find the Newtons could not have reasonably relied on Ms. Dongieux’s statement as a reason not to further investigate. When taken in context, Ms. Don-gieux’s statement that she could soak up the puddle with a beach towel was an example of what remained after the water drained after a heavy rain. She made no statement about the amount of water that ponded during the heavy rain. Further, the waiver of redhibition signed by the Newtons at the time they executed the agreement to purchase, specifically stated:
Purchaser acknowledges and declares that neither the Seller nor any party, whomsoever, acting or purporting to act in any capacity whatsoever on behalf of the Seller has made any direct, indirect, 112explicit, or implicit statement, representation or declaration, whether by written or oral statement or otherwise, and upon which the Purchaser has relied, concerning the existence or nonexistence of any quality, characteristic or condition of the property herein conveyed. Purchaser has had full, complete and unlimited access to the property herein conveyed for all tests and inspections which Purchaser, in Purchaser’s sole discretion, deems sufficiently diligent for the protection of Purchaser’s interests.
The waiver stated that it would be made a part of and would not become effective until the act of sale. Thus, at the time of the act of sale, the Newtons expressly stated that they had not relied on any written or oral statements made by the Dongieuxes regarding any quality, characteristic or condition of the property.
*485 Based on these circumstances, we do not find the Newtons acted as reasonably prudent buyers in failing to further investigate a potential flooding defect in the backyard when the sellers disclosed in the property disclosure form that water ponds in the backyard during a heavy rain.
As for the flooding of the carport, the record shows that it was a redhibitory defect that was not disclosed by the Don-gieuxes. In particular, question 12 of “Section 3: Structure” of the property disclosure form asked, “Has any structure on the property ever taken water by flooding (rising water or otherwise)?” to which the Dongieuxes answered no. To the contrary, the evidence presented at trial clearly showed flooding of the carport behind the cabana, located at the rear of the property, with several inches of water on top of the slab and against the foundation and two sets of stairs leading to the cabana and to the apartment above the cabana.
A purchaser is entitled to the warranty against redhibitory defects, unless expressly waived. To be effective, a waiver of warranty against redhibitory defects must meet three requirements: (1) be written in clear and unambiguous terms; (2) be contained in the contract; and (3) either brought to the attention of the buyer or explained to him. Jeffers v. Thorpe, 95-1731 (La.App. 4 Cir. 1/19/96); 673 So.2d 202, 205, writ denied, 96-1721 (La.10/4/96); 679 So.2d 1390. The Newtons never challenged the existence of a valid redhibition waiver, but rather maintained the waiver was void because the Dongieuxes failed to disclose the defect.
The Newtons can only obtain relief from the redhibition waiver if they can show fraud in the inducement of the contract. See Shelton v. Standard/700 Associates, 01-587 (La.10/16/01); 798 So.2d 60, 64. A warranty against redhibitory defects is not effective if the seller commits fraud, as defined in the civil code, upon the buyer. Id.
A contract is formed by the consent of the parties. La. C.C. art. 1927. However, consent may be vitiated by fraud. La. C.C. art. 1948. “Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.” La. C.C. art. 1953. “Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill.” La. C.C. art. 1954.
There are three elements for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by the fraudulent act must relate to a circumstance substantially influencing the victim’s consent to the contract. Shelton, supra.
In this case, we cannot say the Dongieuxes committed fraud when they failed to disclose the flooding of the carport. Specifically, the record does not support a finding that the Dongieuxes intended to obtain an unjust advantage over the Newtons or to cause damage or inconvenience to the Newtons. • First, the Don-gieuxes were not trying to sell their house when they were approached by the Newtons, who expressed an interest in buying the house. Ms. Dongieux testified |14that when Mrs. Newton approached her about buying the house, she did not want to sell. Dr. Dongieux also testified that Ms. Don-gieux did not want to sell the house. Second, there were no negotiations regarding the purchase price. Dr. Dongieux stated that his wife asked him to give the Newtons a “ridiculous price just to get [Mrs. *486 Newton] off my back.” He told the Newtons he would sell the house for $1.4 million and they accepted without any negotiation. Mr. Newton testified that when Dr. Dongieux called and said he wanted $1.4 million, they said okay. Third, the Don-gieuxes did disclose flooding issues in the backyard, where the carport was located. We do not find these facts sufficiently demonstrate that the Dongieuxes intended to defraud the Newtons.
Based on the total circumstances surrounding the purchase of this property, we cannot say the Dongieuxes committed fraud by failing to disclose the carport flooding. Although the flooding of the carport was a redhibitory defect, the Newtons executed a valid waiver of the warranty of redhibition. Thus, they are not entitled to damages for any redhibitory defect.

DECREE

Based on the foregoing, we reverse the trial court’s judgment in favor of Plaintiffs, William and Elaine Newton, against Defendants, Gene Dongieux, Sr. and Rhonda Dongieux, relating to Plaintiffs’ redhibition claims and award of attorney’s fees. The Plaintiffs are to bear the costs of this appeal.

REVERSED.

. At the time of trial, the Dongieuxes had divorced and Rhonda Dongieux’s name had changed to Rhonda Lorio. For ease of party identification, we will refer to Rhonda throughout this appeal as Ms. Dongieux.

. The trial court denied Plaintiffs’ claim for breach of contract. Plaintiffs did not answer this appeal; thus, the breach of contract claim is not before us on appeal. :

. See McCarthy v. E & L Development, Inc., 45,683 (La.App. 2 Cir. 11/10/10); 54 So.3d 1143, 1148.