JUDE G. GRAVOIS, Judge.
| Jlefendants/appellants, Shirley Crock-er, wife of/and Bobby Malbrough (“the Malbroughs”), appeal a trial court judgment that found plaintiffs/appellees, Cheryl Flanagan, wife of/and Nicholas Rogers (“the Rogers”) did not commit fraud in the sale of their home to the Malbroughs. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY

On June 1, 2007, the Rogers agreed to sell their home located at 2 Chateau Mar-gaux Court in Kenner, Louisiana, to the Malbroughs for the price of $490,000.00. A purchase agreement was signed, and pursuant to that agreement, a property inspection of the home was performed. Following the inspection, the Rogers corrected certain deficiencies in the home, which corrections were accepted by the Malbroughs. The Malbroughs, however, were unable to obtain the funds necessary to proceed with the closing. Therefore, instead of signing an act of sale, on June 28, 2007, the parties entered into a one-year lease-purchase agreement, | ¡¡which required that the sale take place within that time period.[1] Pursuant to the lease-purchase agreement, the Malbroughs agreed to pay, among other payments, $3,000.00 per month in rent, with $1,000.00 of the monthly rent being credited towards the purchase price of the home.
The Malbroughs lived in the home under the lease-purchase agreement for 17 months.[2] Prior to completing the act of sale, a second appraisal of the home was required. This appraisal came back at $428,000.00, which resulted in additional financial issues for the Malbroughs. Thus, in order to complete the sale at the originally agreed upon price of $490,000.00, the parties agreed that they would close the act of sale for a price of $428,000.00, and at the same time, the Malbroughs would execute a promissory note in favor of the Rogers for the difference between the purchase price and $490,000.00, after giving the Malbroughs credit for rent and other payments.
On November 26, 2008, an Act of Cash Sale of the home at the price of $428,000.00 was consummated. The act of sale included an expressed waiver of warranty as to fitness of the home and redhi-bition. The promissory note, also signed on November 26, 2008, called for the Malb-roughs to pay the Rogers $52,125.00, plus interest at an annual rate of 5.99 percent, payable in six equal monthly installments of principal and interest. By mutual agreement of the parties, the principal amount of the promissory note was later corrected to $51,800.00.
It is undisputed that the Malbroughs only paid the first installment due on the promissory note. As a result, on April 14, 2009, the Rogers filed a petition exercising their right to accelerate the payments due under the promissory note and |4to collect the entire principal balance due as of that time, $41,144.69,[3] plus interest, attorney’s *871 fees, and costs. On May 28, 2009, the Malbroughs filed an answer and reconven-tional demand against the Rogers, claiming that the Rogers “engaged in a course of fraudulent activity which was specifically designed to hide and conceal defects in the home.” Specific to this appeal were allegations made in the reconventional demand that the Rogers fraudulently concealed defects in both the master bathroom and the roof of the home.[4] A bench trial on both the Rogers’ claim on the promissory note and the Malbroughs’ red-hibition claims was held on September 16, 2013.
At trial, Mr. Malbrough testified that on the day he and his family moved into the home, which was a few days after the June 28, 2007 lease-purchase agreement was executed, it was discovered that there was approximately an inch of water in the laundry room, which was adjacent to the master bathroom, after six family members took showers in the master bathroom. Mr. Malbrough testified that he immediately called Mr. Rogers and claims that he responded as follows: “Oh, I forgot to tell you, about every six months or so you’ve got to put plumber’s putty [on the shower drain].” Mr. Malbrough testified that Mr. Rogers directed him to a can of plumber’s putty underneath the bathroom sink, which Mr. Malbrough applied several times over an extended period of time to the shower drain. However, because the problem persisted, Mr. Malbrough called Accardo and Lambert Plumbing in 2009 to address the leak in the shower drain. They applied silicone to the drain, but when that effort did not work, they tunneled underneath the home and ultimately determined that the shower had been installed 1 ^without a drain pan and the drain had separated from the drain pipe. As a result of the leakage, mold and mildew had grown on the inside of the shower walls. The entire shower had to be rebuilt. 'The tub also had to be replaced. Mr. Malb-rough testified that he paid $10,150.00 for the master bathroom plumbing and reins-tallation repairs.[5]
At trial, Mr. Rogers testified that he lived in the home at 2 Chateau Margaux Court for 15 years. According to Mr. Rogers, he never had a telephone conversation with Mr. Malbrough about the master bathroom plumbing incident. Rather, Mr. Rogers testified that he received a call from his agent letting him know that the Malbroughs had water on the laundry room floor. He explained to her that he had had the same problem some eight to ten years earlier, remedied the problem by placing silicone around the drain, and never had this issue again.
The Malbroughs also claimed in their reconventional demand that the Rogers fraudulently concealed prior roof damage. Mr. Malbrough testified that during a rainstorm in January 2009, water “like a waterfall” was coming down his chimney and the sheetrock next to the chimney, and into the air-conditioning return vent on the backside of the chimney. He also testified that the rain water from the chimney area accumulated in a corner of the garage. He notified Mr. Rogers of this problem, who told him in an email that he forgot to tell him that several years earlier, he also had had water accumulate in the corner of *872 the garage. Mr. Malbrough testified that he was advised that it would cost between $10,000.00 and $12,000.00 to properly fix his roof.
Christopher Perdomo of Augustino Brothers Construction, who was accepted as a roofing expert, testified that after several attempts to fix the roof failed, his recommendation was either to reframe the roof in the area of the ^chimney or completely demolish the chimney. He also testified that after inspecting the home, he thought that this was a “progressive problem” that had been in existence for “two-plus years.”
Mr. Rogers testified that in 2001, he had one leak in his roof where water came into the corner of the garage. After calling a roofer, he was told that he needed to waterproof his chimney, which he had completed by Pride Waterproofing in 2001.[6] According to Mr. Rogers, following the waterproofing, he “never had any other water come in.” Further, Mr. Rogers testified that in 2002, he had the roof on the home replaced by Triple B Roofing. After Hurricane Katrina, some roofing tiles were missing and some vent tops were blown off, but he immediately fixed those issues. He testified that he did not have any water in his home from the storm. Besides that one leak in the garage in 2001, he never had any other leaks. When asked why he did not disclose these issues to the Malb-roughs prior to the sale, he responded that “the issues we had over those years were just maintenance things that I took care of right away.” Finally, he testified that the only other work done on the roof was replacement of the flashing around the chimney, which was done in June of 2007 pursuant to the property inspection done as part of the purchase agreement signed by the parties in this case.
After receiving post-trial memoranda from the parties, on November 7, 2013, the trial court rendered judgment in favor of the Rogers in the amount of $41,144.69, the principal balance due on the note, plus interest at the annual rate of 5.99 percent, $7,000.00 in attorney’s fees, and all costs of the proceeding.[7] Concerning the recon-ventional demand, the trial court found that the Malbroughs had not proven by a preponderance of the evidence that the Rogers committed 17fraud against them in the sale of the home. However, in accordance with the lease-purchase agreement, the trial court found that the Malbroughs were entitled to an offset against the balance due on the promissory note in the amount of $10,150.00 for the costs incurred by the Malbroughs for the plumbing repairs made in the master bathroom.[8] This appeal by the Malbroughs followed.[9]

ASSIGNMENTS OF ERROR NOS. ONE AND THREE

In their first assignment of error, the Malbroughs argue that the trial court erred in denying recovery on their recon-ventional demand when the Rogers knowingly failed to disclose the existence of water intrusion on the purchase agreement, but later admitted in an email that the problem existed prior to the act of *873 sale. Additionally, in their third assignment of error, they argue that the trial court erred in failing to recognize well-established law that the failure to disclose the existence of known defects vitiates a waiver of redhibition. These related assignments of error are discussed together.
A seller warrants the buyer against red-hibitory defects in the thing sold. La. C.C. art. 2520. A defect is redhibitory when it either renders the thing useless or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect, or it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. Id.
Though a buyer is entitled to the warranty against redhibitory defects, it can be expressly waived. Newton v. Dongieux, 13-776 (La.App. 5 Cir. 06/24/14), 145 So.3d 478, 485. If a valid waiver exists, then a buyer can only obtain relief if he can show fraud in the inducement of the contract. Id., citing Shelton v. Standard/700 Associates, 01-587 (La.10/16/01), 798 So.2d 60, 64. “A warranty against redhibitory defects is not effective if the seller commits fraud, as defined in the civil code, upon the buyer.” Id.
A contract is formed by the consent of the parties. La. C.C. art. 1927. Nonetheless, consent may be vitiated by fraud. La. C.C. art. 1948. “Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.” La. C.C. art. 1953. “Fraud does, not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill.” La. C.C. art. 1954.
There are three elements for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by the fraudulent act must relate to a circumstance substantially influencing the victim’s consent to the contract.

Newton, swpra.

At trial and on appeal, the Malbroughs focus their argument on a March 19, 2009 email sent to Mr. Malbrough from Mr. Rogers. In the email, Mr. Rogers admits that he had had a similar problem with water leaking from the roof years earlier.[10] The Malbroughs argue that the trial court failed to recognize this admission, and that since the Rogers knew of the redhibitory defect and failed to | ¡¡inform the Malb-roughs of the defect, the waiver of warranty was not made in good faith.
*874 Upon review, we find that the trial court did not err in finding that the Malb-roughs did not prove by a preponderance of the evidence that the Rogers committed fraud against the Malbroughs. At trial, Mr. Rogers testified that he did have water in his garage in 2001. At that time, it was determined that the chimney needed to be waterproofed, and this was completed by Pride Waterproofing. He further testified that he installed a brand new roof on the home in 2002 and never again had any more issues with water leaking into the garage. He admitted that he did not disclose the leak because he believed it was a maintenance issue that had been resolved.
The trial court found credible Mr. Rogers’ testimony that although he knew about a roof leakage problem, it had been resolved long before the act of sale took place. When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the findings, for only the fact-finder is cognizant of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Schmuck v. Menees, 13-557 (La.App. 5 Cir. 12/12/13), 131 So.3d 277, 280.
Thus, given the trial court’s broad discretion as the fact-finder, we find no error in the trial court’s determination that the Rogers did not commit fraud against the Malbroughs concerning the water leakage problems with the home encountered by the Malbroughs. The record does not reasonably support a finding that the Rogers intended to obtain an unjust advantage or cause damage or inconvenience to the Malbroughs. These assignments of error are without merit.
| ^ASSIGNMENT OF ERROR NO. TWO
In their second assignment of error, the Malbroughs argue that the trial court erred when it failed to be “consistent” in finding that the Rogers were responsible for the defect in the plumbing, but not responsible for the water intrusion into the residence. Specifically, they argue that there is no distinction between the Rogers’ knowledge of the plumbing leak in the master bathroom, for which the trial court found Mr. Malbrough’s testimony credible, and the Rogers’ knowledge of the water intrusion, for which the trial court found Mr. Rogers’ testimony credible.
In its reasons for judgment, the trial court expressed the following relative to this argument, to-wit:
While this Court finds credible Mr. Malbrough’s testimony regarding his discovery of the master bathroom leak and the water leaking into the house starting in 2009, this Court also finds credible the above testimony of Mr. Rogers. Specifically, this Court finds credible Mr. Rogers’ testimony that he encountered problems with the master bathroom and water leaking into the home years ago, but that those problems had resolved long before the act of sale took place. The Malbroughs presented no evidence to contradict the testimony of Mr. Rogers on these issues. This Court finds that the Malbroughs have not proven by a preponderance of the evidence that the Rogers committed fraud in the sale of their home to the Malbroughs. See Shelton, 2001-0587 at p. 4, 798 So.2d at 64; La. Civ.Code art. 1957.
The trial court goes on to further find for the Malbroughs regarding the master bathroom plumbing repairs because “based on a fair reading of the lease provision, this Court determines that the *875 Rogers were responsible for the plumbing repairs, and the Malbroughs were responsible for the maintenance and repairs to equipment such as air conditioning and heating equipment, roof and water heat-' ers_” [11] The court determined that the plumbing problems and repairs began during the lease term, even though the repairs were not completed until after the Inlease expired, and thus, the court found that the Rogers were liable for the plumbing repairs in the master bathroom under the lease provisions.
Upon review, we find that the trial court was not “inconsistent” regarding its findings. The offset the Malbroughs received regarding the plumbing repairs was not based on their redhibition claims. Rather, it was based on the pertinent terms of the lease-purchase agreement that imposed upon the Rogers, as lessors, responsibility for any required plumbing repairs during the term of the lease. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. FOUR

In their fourth assignment of error, the Malbroughs argue that the trial court erred in failing to award them attorney’s fees even though the trial court deter-' mined that they proved the existence of an undisclosed plumbing defect in the master bathroom. Again, as set forth above, the trial court awarded the Malbroughs an offset of $10,150.00 for the plumbing repair costs pursuant to the terms of the lease-purchase agreement and not because on any fraud committed by the Rogers.[12] This assignment of error is without merit.

CONCLUSION

For the foregoing reasons, the trial court’s judgment under review is affirmed. Costs of this appeal are assessed to appellants.

AFFIRMED

. It is noted that in several places, the lease-purchase agreement is dated June 29, 2007; however, the signature pages thereof are dated June 28, 2007.

. The record reflects that after the lease-purchase agreement expired, the Malbroughs continued to lease the home from the Rogers on a month-to-month basis under the same terms and conditions contained in the lease-purchase agreement.

. In addition to the single payment on the promissory note made by the Malbroughs, by mutual agreement of the parties, the Malb-roughs received credit against the principal *871 balance due on the promissory note for the amount of an insurance refund check that was received by the Rogers.

. The reconventional demand also made a claim regarding a cracked slab in a floor of the home. That issue is not pertinent to this appeal.

. Bills from Accardo and Lambert Plumbing to the Malbroughs totaling $10,150.00 were introduced into evidence.

. Admitted into evidence was a check from 2001 for waterproofing the chimney paid to Pride Waterproofing.

. In their appeal, the Malbroughs have not contested the amount of the judgment on the promissory note that was rendered against them.

. The trial court also based its judgment against the Rogers, alternatively, on “principles of equity.”

. The Rogers have not contested the judgment of $10,150.00 rendered against them, either by direct appeal or by answer to the Malb-roughs' appeal.

. In the email from Mr. Rogers to Mr. Malb-rough dated March 19, 2009, Mr. Rogers provided the following comments pertaining to Mr. Malbrough’s complaints dealing with “Water in Garage,” to-wit: "When you mentioned that you had water coming in the garage, I could have said nothing. But, instead, in my attempt to help you find a quick solution to the problem, I remembered when I had a similar problem years ago. As I told you in my correspondence at the time, I was told the brick chimney has to be ‘restriped’ every so many years. Since this was the first brick chimney I had on a house, I was not aware of that. Once I got the 'restriping’ done by a waterproofing company, the water stopped coming in. I passed that information on to you to help you out. If I was trying to hide something, why would I volunteer that information to you? Now you are trying to use that against us accusing us of hiding a defect. If there are other problems with the water coming in, it again sounds like a maintenance issue. Also, we were not having any issues with the water coming in around the fireplace until your inspector required us to repair the flashing!!!”

. The lease-purchase agreement specifically provides that "Lessor [the Rogers] shall be responsible for the repair of electrical, plumbing, air conditioning and heating system provided the repair is not caused by misuse or neglect by the Lessee [the Malbroughs].” (Emphasis supplied.)

. We further note that the lease-purchase agreement does not provide for payment of attorney's fees to the lessees for any claim made under the pertinent provision of the lease-purchase agreement.