WALTER J. ROTHSCHILD, Judge.
 

 |?F ollowing a jury trial in this tort suit, defendant appeals from the trial court’s allocation of fault and award of damages. For the reasons stated herein, we affirm.
 

 Gregory Johnson, an employee of Boh Bros. Construction Co., Inc., sustained injury on February 10, 2006 during a delivery of pilings to a worksite by Frank Lee, a driver working for Gene’s Delivery Service, Inc. The pilings and the trailer carrying them were supplied by Boykin Brothers, L.L.C. During the delivery, Johnson was assigned the role of flagman and was charged with the responsibility of directing Lee to the proper location near a crane to unload the pilings. Two other Boh Bros, employees participated in this maneuver: Conrad Talbony, the foreman, and Anthony Barient, the crane operator. While Lee was attempting to position his truck, Johnson was pinned between the trailer and the crane and sustained serious injury.
 

 On March 14, 2006, Gregory and Elean-ora Johnson filed the instant suit against Frank Lee and his insurer, Canal Indemnity Insurance Company. Plaintiffs | ^subsequently amended the suit to add Boykin Brothers, L.L.C. and their insurer, Travelers Property Casualty Company of America. All parties except Travelers settled prior to trial, and the matter proceed
 
 *706
 
 ed to jury trial against Travelers in June of 2009.
 

 Following several days of testimony, the jury allocated fault to Frank Lee in the amount of 75% and to plaintiff, Gregory Johnson in the amount of 25%. Judgment on this jury verdict was signed on July 6, 2009, and Travelers filed post-trial motions which were denied on August 21, 2009. Travelers suspensively appeals from this judgment on the basis of two assignments of error: 1) the trial court erred in failing to allocate fault to the Boh Bros, foreman and crane operator and allocated excessive fault to Frank Lee; and 2) the trial court awarded an excessive amount of damages to plaintiff for future pain and suffering.
 

 Standard of Review
 

 In
 
 Foley v. Entergy Louisiana, Inc.,
 
 06-983, pp. 9-10 (La.11/29/06), 946 So.2d 144, 153-54, the Louisiana Supreme Court restated the standard of review as follows:
 

 The Louisiana Constitution provides that our jurisdiction in civil cases extends to both law and facts. LSA-Const. art. V § 5(C). This provision, resulting from Louisiana’s history as a civilian jurisdiction, has been interpreted as giving this court the power to decide factual issues de novo. The exercise of this power is limited, however, by the jurisprudential rule of practice that a trial court’s factual findings will not be upset unless they are manifestly erroneous or clearly wrong.
 
 Ferrell v. Fireman’s Fund Insurance Co.,
 
 94-1252, pp. 3-4 (La.2/20/95), 650 So.2d 742, 745. Under this rule, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one.
 
 Stobart v. State, Department of Transportation & Development,
 
 617 So.2d 880, 882 (La.1993). If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
 
 Id.
 
 at 882-883.
 

 14When the findings are based on determinations regarding the credibility of witnesses, the manifest error-elearly wrong standard demands great deference to the findings of fact, for only the fact finder is cognizant of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness’s story, a reviewing court may well find manifest error even in a finding purportedly based upon a credibility determination.
 
 Id.
 
 Where such factors are not present, however, and a fact finder’s determination is based on its decision to credit the testimony of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
 
 Id.
 
 The rule that questions of credibility are for the trier of fact applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony.
 
 Lasyone v. Kansas City Southern Railroad,
 
 00-2628, p. 13 (La.4/3/01), 786 So.2d 682, 693.
 

 These standards for manifest error review are not new. These standards are the guiding principles that aid our review of a trial court’s factual determinations. A manifest error review is applicable to the fact-driven determinations presented in this case, including the finding of percentages of fault by the
 
 *707
 
 trier of fact.
 
 Clement v. Frey,
 
 95-1119, p. 7 (La.1/16/96), 666 So.2d 607, 610
 

 A review of general damage awards are governed by the same principles. In
 
 Youn v. Maritime Overseas Corp.,
 
 the Supreme Court upheld the longstanding rule that an appellate court is not to decide what it considers an appropriate award, but rather to review the exercise of discretion by the trier of fact, considering the particular injuries and their effects on the particular circumstances of the particular plaintiff. Only when the appellate court determines that the trier of fact abused its much discretion, may the award be set aside as either too high or too low.
 
 Collier v. Benedetto,
 
 04-1025, p. 8 (La.App. 5 Cir. 2/15/05), 897 So.2d 775, 779.
 

 Apportionment of Fault
 

 Travelers argues on appeal that the trial court erred in failing to apportion any fault to Boh Bros, employees Anthony Barient or Conrad Tabony as evidence | ¡-.presented by plaintiffs proved that these individuals played a substantial factor in the series of events which caused plaintiffs injuries. Travelers points to testimony that Tabony and Barient devised a dangerous plan to park the truck without causing Boh Bros, additional time and expense. Travelers also relies on testimony that Barient turned his back on plaintiff and failed to alert Lee to stop the truck. Thus, Travelers contends that a reallocation of fault is warranted.
 

 At trial, Frank Lee testified that he was a commercial driver and on the date of the accident he picked up a load of pilings from Boykin Bros, in an 18 wheeler tractor trailer. The pilings were to be used to construct an overpass near the Bonnabel exit on the interstate in Jefferson Parish. Mr. Lee stated that it was not a usual delivery that day because there were problems with the machines and power lines. He stated that due to this situation, he was forced to put the truck in a place where he did not want to put it. Mr. Lee stated that he was assigned a flagman by Conrad Tabony, and Greg Johnson told him to watch him so they could put the truck where it needed to be. Mr. Lee stated at first that Mr. Johnson was off to the side of the trailer on the passenger side of the truck. Then, Mr. Johnson began walking behind the truck between the trailer and the crane and Mr. Lee was aware of Mr. Johnson’s position behind the truck. At some point, Mr. Lee lost sight of Mr. Johnson at approximately the same time the trailer hit the crane. Mr. Lee testified he saw Mr. Johnson fall backwards.
 

 Although Mr. Lee testified that Boh Bros, employees were telling him where to put the truck, he further testified as follows:
 

 Q. You have the control over that truck, over the brakes and the accelerator, isn’t that true?
 

 A. Yes, I do.
 

 1rQ. And you have the right as a licensed commercial driver not to move that truck if you know it’s not safe, isn’t that true?
 

 A. Yes, it’s true.
 

 Q. Regardless of what Broh Bros, says, isn’t that true?
 

 A. This is correct.
 

 Q. It’s ultimately your responsibility, you can’t pass it off on the foreman of the job, isn’t that true?
 

 A. Okay.
 

 Q. The operation of your truck?
 

 A. Okay. The operation of my truck, that is my control, and I cannot pass that up on him, no.
 

 Q. And you cannot pass off the fact that you backed up when you knew someone was behind your truck in an unsafe position, isn’t that true?
 

 
 *708
 
 A. Yes.
 

 Mr. Lee further testified that while he was backing up, he could see Mr. Johnson over his load from the chest up. He also testified that if he had to back up the truck all over again, he would never allow Mr. Johnson to stand behind the trailer as he backed up.
 

 The record also contains the testimony of Anthony Barient, the Boh Bros, crane operator on the date of the accident. Mr. Barient stated that he previously drove 18 wheeler trucks, and was aware that the flagman should position himself on the side of the truck and not behind the truck. Mr. Barient stated that on the date of the accident four trucks arrived at the work site near the Bonnabel overpass to deliver pilings. The foreman decided where the trucks should be, and Greg Johnson started flagging the trucks back. During this time, Mr. Barient worked |7with David Perry to put the cables on the crane rigging that they would need to unload the pilings. Mr. Barient then stated:
 

 At a point of maybe, I don’t know, Greg was maybe 15 feet away from the crane, 20 feet away from the crane when the truck got back on him, I noticed that Greg was behind the truck, but yet I was focused, you know, at that point he was not in danger of being in a pinch point or getting smashed because there was still a lot of distance between him and the crane.
 

 Then I was focusing on my work with David, and at one point because of the design of the crane, I have a blind spot with the boom on the side, Greg and the back of the truck disappeared from my view. Then all of a sudden I felt the truck hit the track of the crane and Gregory went to screaming, and I came out of the crane and saw Greg there, you know, pinned between the back of the truck and the track of the crane.
 

 And I immediately jumped off and just dialed 911 and got the ambulance on the way, you know. I’ve said in my previous deposition, you know, that I regret not telling Greg to get out from behind that truck. But like I say, at the point that I saw him, he was not in a near pinch point to be smashed.
 

 Mr. Barient stated that it would not have been possible to move the crane to allow more room for the trucks to maneuver due to the presence of piles that had already been driven. Further, Mr. Bar-ient stated that the employees from Boh Bros, do not tell drivers how to maneuver the truck, except to say where the truck should be placed and to flag them to come back and when to stop. However, Mr. Barient stated he did not speak to Mr. Lee. Mr. Barient stated that like with cranes, the operator has the ultimate responsibility. However, Mr. Barient stated that although he saw Mr. Johnson behind the truck and had the ability to blow the horn and stop what was going on, but he did not do so.
 

 The record also contains the testimony of Conrad Tabony who stated he was the Boh Bros, foreman at the worksite on the date of the accident. He stated he expects truck drivers who make deliveries at the site to operate their vehicle safely, but he cannot control how the trucks are operated.
 

 IsPlaintiff also presented the testimony of John Ramirez who was qualified as an expert in trucking safety. He stated that Mr. Lee acted improperly by backing up when Mr. Johnson was behind the truck. He stated that the truck driver is supposed to coordinate signals with the flagman, and this failed to happen in this case.
 

 Gregory Johnson also testified at trial that he was the flagman for Mr. Lee’s delivery truck as he had been on previous
 
 *709
 
 occasions. He stated that he made eye contact with Mr. Lee through the mirror as he walked backwards along the passenger side of the truck. He then said that because the truck was coming in at an angle he moved over to try to guide the truck in place. At some point, he lost eye contact with Mr. Lee, but he fell and the truck kept backing up.
 

 At the close of trial, the jury rendered a verdict in favor of plaintiffs and found both Frank Lee and Gregory Johnson at fault in causing this accident. Travelers does not contest the allocation of fault to Gregory Johnson. However, defendant argues by this appeal that the jury was clearly wrong in failing to allocate any fault to Anthony Barient or Conrad Talbo-ny. Defendant argues that Boh Bros, employees made a decision to unload the truck in a very tight space which required the truck come in contact with the crane. Defendant contends that these employees were negligent in setting up the manner of the delivery and they should have been allocated fault for the accident.
 

 Testimony in the record indicates that the delivery of pilings on the date of the accident was not unusual. Although defendant contends that Boh Bros, could have moved the crane to make the delivery easier, the evidence fails to support this argument. Plaintiff testified that he did not believe that another flagman was needed to get the truck into the required location. The jury apparently chose to credit the testimony at trial that the design of the delivery executed by the Boh [nBros. employees was not unusual or a cause of the accident. Our review of the record regarding the design of the delivery fails to support a finding that the jury was clearly wrong in finding no fault on the part of Conrad Talbony.
 

 Further, Anthony Barient specifically testified that he was working in the crane in preparation of unloading the pilings once the truck was in the correct location. Although Anthony Barient saw Gregory Johnson walking behind the truck and regretted his failure to say anything, the record also indicates that Mr. Barient was focused on his work on the crane and that he did not believe plaintiff to be too close to the crane at this point. Further, Mr. Barient stated that as he turned the boom on the crane, there was a blind spot which prevented him from seeing the back of the truck. The record supports a finding that Mr. Barient was not the responsible party for placement of the delivery truck. We thus find no manifest error in the jury’s determination that Mr. Barient was not at fault for his actions on the date of the accident.
 

 Under these circumstances, we find no reallocation of fault would be appropriate in this case. The record supports the jury’s determination that Frank Lee was the primary responsible party for safely backing up the truck in the desired location. He admitted that it was improper to continue backing up when he could no longer see the flagman, Mr. Johnson. The jury apparently credited the testimony of Mr. Lee that the operation of the delivery truck was solely within his control. The jury also heard testimony that Mr. Lee could not pass on the responsibility of backing the truck, and that only the driver can be responsible for backing up the truck. After a complete review of the trial testimony, we find no error in the jury’s allocation of fault in this case.
 

 h
 
 pAivard for Future Pain and Suffering
 

 Travelers argues that the jury erred in awarding plaintiff $937,500.00 for future pain, suffering, mental anguish and emotional distress, as it was greater than three times the award given for past pain and suffering. While Travelers acknowledges that plaintiff will likely continue to
 
 *710
 
 experience some pain and suffering in the future, Travelers contends that plaintiff has become relatively well-adjusted and that the worst of his medical treatment is behind him. Further, Travelers points out that plaintiffs surgical wounds have healed and no significant pain was noted in plaintiffs 2008 medical records.
 

 Evidence presented at trial indicates that plaintiff sustained crush injuries to both legs below the knee requiring the installation of external fixations. Plaintiff also sustained injury to the blood vessels in his left leg, requiring amputation below the knee. Dr. Frank Rabito, the infectious disease doctor who treated plaintiff, testified that plaintiff had a poor surgical result which left him with an abnormal “stump.” He has tried to use a prosthesis, but has experienced great difficulty in doing so. The prosthesis causes wounds on his leg, which in turn create infections. He has encountered numerous infections from skin irritations to his amputated leg and he continues to experience skin lesions and recurring boils. Dr. Rabito testified that plaintiff will likely suffer from these painful boils for the rest of his life.
 

 Dr. Keith Larkin, plaintiff’s treating orthopedist, testified that because of the problems developed since plaintiffs injury, it takes him a longer time to heal. There was also evidence that plaintiffs inability to use a prosthesis may require him to have another surgery on this stump. Unless he is able to get a functioning prosthesis, plaintiff will spend the rest of this life confined to a wheelchair or on crutches.
 

 | nFurther, the record contains the deposition testimony of a pain management physician, Dr. John Clark, who testified that plaintiff requires schedule II narcotics for his pain, and he will likely need to do so for the rest of his life, requiring monthly doctor visits.
 

 The record also indicates that plaintiff suffers from a variety of mental health issues, including post-traumatic stress disorder, depression and anxiety. Plaintiff testified that the loss of his leg and his job caused him to lose self-worth and self-esteem, and he has become introverted as a result. The record contains the testimony of a psychologist, Dr. Cary Rostow, who found plaintiff to be very depressed and disheartened, and obviously in pain. Dr. Rostow testified that plaintiffs high level of depression and anxiety will create significant problems in his future treatment, and that because of his low education level, he is not equipped to deal with his medical and psychological condition.
 

 After hearing this testimony and evidence, the jury awarded plaintiff $937,500.00 in future pain, suffering, emotional distress and mental anguish. Although defendant relies on jurisprudence in support of its argument that this award constitutes an abuse of discretion, a review of these cases shows that they are distinguishable from the present factual situation. In the present ease, plaintiff is a former manual laborer in his mid-40s who suffered the loss of his leg below the knee. The testimony and evidence at trial indicates that plaintiff encountered an abnormal surgical result which causes repeated infections and painful boils. He continues to suffer pain and discomfort on a daily basis, and will likely require additional revisions to his amputated leg in the future. He lost his primary source of self-esteem in his job, and he is facing a future in a wheelchair. Our task is to consider whether the particular injuries sustained and their effects on the particular circumstances of the particular plaintiff justifies the award in this case. Although |12we find the jury’s award for future pain and suffering to be at the high end of the scale, we cannot say that the jury abused its
 
 *711
 
 discretion in rendering this award. We therefore decline to disturb the award.
 

 Conclusion
 

 Accordingly, for the reasons assigned herein, the judgment of the trial court is affirmed. Travelers Property Casualty Company of America shall bear all costs of this appeal.
 

 AFFIRMED.