ROBERT M. MURPHY, Judge.
| gPlaintiffs-appellants, Jalima Tamayo, Sobeyda Green a/k/a Sobeyda Raquel Ser-aphin, and Fox Cars, LLC, appeal from the trial court’s May 21, 2013 judgment partially granting and partially denying plaintiffs’ motion for judgment notwithstanding the verdict, and awarding plaintiffs damages. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
This lawsuit arises out of a rear-end collision on March 17, 2011, wherein So-beyda Seraphin was driving a 2004 Chevy Aveo, which was struck from behind by a *463 2008 Honda Civic operated by defendant, Kevin Klopf. Jalima Tamayo, was riding as a passenger in the Aveo, which was owned by Fox Cars, LLC at the time of the accident. On May 10, 2011, plaintiffs, Jalima Tamayo, Sobeyda Seraphin, and Fox Cars, LLC, filed a petition for damages arising out of the accident against Kevin Klopf and his insurer, American National General Insurance Company. The matter proceeded to a jury trial on March 11, 2013 through March 13, 2013.
|sAt trial, the parties offered evidence showing that the accident at issue occurred on the Causeway Bridge at around 7:00 p.m. or 7:30 p.m. at night. Although Ta-mayo typically drove the Aveo, Seraphin was driving at the time of the accident because Tamayo was tired from working that evening. Plaintiffs were traveling in the southbound lane of the Causeway when their Aveo experienced a flat tire. As a result, Seraphin slowed the car down to approximately 30 to 35 miles per hour, and plaintiffs claim that she turned on the emergency hazard lights and intended to change the tire at the next crossover on the Causeway.
Meanwhile, Klopf was also traveling in the southbound lane of the Causeway at approximately 65 miles per hour. Just prior to the collision, Klopf testified that he did not see any other vehicle, any rear taillights or any hazard lights ahead of him on the bridge. When his cell phone lit up, Klopf glanced down at his cell phone, which was located in his driver’s side door handle. Klopf testified that he looked down at his phone for approximately one to two seconds, but that he did not use the phone. When Klopf looked up at the road again, all he saw was the white paint of the Aveo immediately in front of him. At that point, Klopf applied the brakes, but did not have time to avoid striking the Aveo from the rear.
The Aveo was owned by plaintiff Fox Cars, LLC, a company owned by Tamayo’s husband, Armando Cruz. At the time Fox Cars purchased the Aveo, the car had a salvage title, as it had previously been declared a total loss. Cruz testified that his shop fully repaired the Aveo, but he had no documents evidencing the repairs. Cruz also testified that the Aveo did not have a brake tag at the time of the accident. Photographs of the Aveo after the accident were shown to the jury, which depicted the rear end of the Aveo completely smashed. Tamayo and Seraphin, as well as each of their husbands, testified that they all witnessed the rear |4hazard lights of the Aveo flashing after the accident. Whereas, Klopf testified that he did not see any rear lights on the Aveo working after the accident, but that he did see the front hazard lights flashing after the accident.
Tamayo and Seraphin both claimed personal injuries as a result of the collision. Specifically, Tamayo introduced evidence indicating that she sustained a herniated lumbar disc, a bulging lumbar disc, and three bulging cervical discs, and Seraphin introduced evidence indicating that she sustained two bulging lumbar discs and soft tissue injuries to her cervical spine. Neither Tamayo nor Seraphin went to the hospital for further medical attention on the night of the accident. However, on the day after the accident, Tamayo sought medical care from Dr. Leia Frickey for headaches, dizziness, and neck and shoulder pain, but she did not complain of back pain at that time. Dr. Frickey’s examination of Tamayo revealed that she had suffered a neck sprain, but her examination of Tamayo’s lumbar area was normal. Ta-mayo was also evaluated by Dr. Gloria Kang, who similarly concluded that Ta-mayo sustained a neck sprain, but found no abnormalities in her back.
*464 Tamayo testified that she did not feel back pain at the time she visited Dr. Frickey, but that she did experience back pain in the following weeks. As a result, Tamayo began treating with Chiropractor Michael Haydel on April 4, 2011, eighteen days after the accident. Chiropractor Haydel documented objective medical findings in Tamayo’s neck and back, which he related to the accident at issue. Upon Chiropractor Haydel’s recommendation, Tamayo obtained an MRI of her neck and back. Tamayo’s. MRI results were reviewed by Dr. Bradley Bartholomew, a neurologist. Dr. Bartholomew testified that Tamayo sustained three bulging lumbar discs, which he opined could have been caused by. trauma, or could have been preexisting. Dr. Bartholomew also ordered a discogram, which | r,produced a positive finding. As a result, Dr. Bartholomew testified that the discogram confirmed that Tamayo was experiencing pain at the L4-5 and L5-S1, and recommended that Tamayo receive a two-level lumbar IDET procedure.
Defendants retained Dr. David Aiken and Dr. Najéeb Thomas to evaluate Ta-mayo.' Dr. Aiken evaluated Tamayo on March 21, 2012, approximately one year after the accident. He testified that during his evaluation of Tamayo, she told him that she was not experiencing any neck or back pain, but that she had been experiencing dizziness and headaches. After his examination of Tamayo’s neck and back both produced normal results, Dr. Aiken opined that if she had neck or back injuries, they had healed by the time of his evaluation. He further opined that because neither Dr. Frickey nor Dr. Kang found any abnormalities in Tamayo’s back following the accident, her lumbar abnormalities could not be related to the accident.
Dr. Thomas also acknowledged Ta-mayo’s lumbar abnormalities, but noted that she exhibited several non-anatomical responses during his evaluation which he described as consisting of generally unreliable responses. Specifically, he testified that when he lightly touched her spine, Tamayo jumped in pain and indicated that it caused pain and heat throughout her leg. Dr. Thomas testified that lightly touching the spine should not cause these responses. He further testified that he witnessed Tamayo walk with a locked-knee limp, which he described as being inconsistent with back or leg pain. Dr. Thomas also noted that Tamayo alternated the limp to the other leg when she walked back towards him.
Seraphin was also treated by Dr. Frick-ey, Chiropractor Haydel and Dr. Bartholomew. Dr. Frickey testified that her examination of Seraphin revealed spasms in her cervical and lumbar spine. Chiropractor Haydel ordered Seraphin to have an MRI of her lumbar spine, which revealed two bulging discs at L3-L4 and | nL4-L5. However, Dr. Aiken interpreted the MRI results of Seraphin’s neck and back as normal. Dr. Aiken also testified that his physical examination of her neck and back was similarly normal.
Defendants also introduced into evidence surveillance videos of Tamayo and Seraphin conducted in March of 2012, roughly one year after the accident. The surveillance videos depicted Tamayo and Seraphin performing various activities ranging from shopping, lifting children in and out of cars, running errands, and bending.
After the conclusion of the evidence, the jury rendered a verdict finding Klopf 50% at fault, Tamayo 20% at fault, Seraphin 20% at fault, and Fox Cars 10% at fault. Although the jury concluded that both Ta-mayo and Seraphin were injured in the *465 accident, they only awarded each plaintiff $15,000 for past medical expenses, respectively, and failed to award any general damages or any damages for future medical expenses. ■ The jury elected not to award Fox Cars any damages.
On April 5, 2013, plaintiffs filed a motion for judgment notwithstanding the verdict (“JNOV”), alleging that the jury rendered an erroneous verdict because it awarded Tamayo and Seraphin damages for past medical expenses, but failed to award them any general damages or any damages for future medical expenses. Plaintiffs further alleged that the verdict was erroneous because the jury only awarded Tamayo and Seraphin 50% of their claimed past medical expenses and it failed to award any damages to Fox Cars.
After a hearing, the trial court rendered a judgment on May 21, 2013 partially granting and partially denying plaintiffs’ motion for JNOV. Specifically, the trial court awarded Tamayo and Seraphin $35,000 and $19,500 in general damages, respectively, but declined to increase their awards for past medicals or to award any damages for future medicals or to award property damages to Fox Cars. |7After reducing plaintiffs’ awards in accordance with Klopf s 50% fault allocation, the trial court awarded Tamayo and Seraphin $17,500 and $9,750 in general damages, respectively. Plaintiffs now appeal.
ASSIGNMENTS OF ERROR
On appeal, plaintiffs raise the following assignments of error:
1. The jury manifestly erred in finding Klopf only 50% liable
2. Defendants failed to overcome the Housley Presumption
3. The trier of fact manifestly erred in awarding Jalima Tamayo only $35,000 in general damages, $15,000 in past medical expenses, and $0 in future medical expenses
4. The trier of fact manifestly erred in awarding Sobeyda Seraphin only $19,500 in general damages, $15,000 in past medical expenses, and $0 in future medical expenses
5. The jury manifestly erred in failing to disregard Dr. David Aiken’s opinion due to his erroneous diagnosis of plaintiffs
6. The jury manifestly erred in giving weight to defendants’ surveillance videos of plaintiffs
7. The trial court manifestly erred in failing to grant plaintiffs’ motion for new trial based upon newly discovered evidence consisting of photographs showing that the taillights of the Aveo were operational after the incident
LAW AND DISCUSSION

Plaintiffs’ Assignment of Error Number One:

In plaintiffs’ first assignment of error, they contend that the jury committed manifest error in its allocation of fault. Specifically, plaintiffs allege that the jury erred in only allocating 50% of the fault to Klopf.
Like all factual findings, the trier of fact is owed great deference in its allocation of fault and its findings may not be reversed unless clearly wrong or manifestly erroneous. Ruttley v. Lee, 99-1130 (La. App. 5 Cir. 5/17/00), 761 So.2d 777, 787, writ denied, 00-1781 (La.9/22/00), 768 So.2d 1287, citing Clement v. \nFrey, 95-1119, 95-1163 (La.1/16/96), 666 So.2d 607, 609-10. Like the assessment of damages, fault allocation is a factual determination and the trier of fact, unlike the appellate court, has the benefit of viewing firsthand the witnesses and evidence. Id. It. is the *466 appellate court’s duty to give deference to the trier of fact. Ruttley, supra. Only after making a determination that the trier of fact’s apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion. Duncan v. Kansas City S. Ry. Co., 00-0066 (La.10/30/00), 773 So.2d 670, 680-81.
An appellate court’s determination of whether the trier of fact was' clearly wrong in its allocation of fault is guided by the factors set forth in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985), including: 1) whether the conduct was inadvertent or involved an awareness of the danger, 2) how great a risk was created by the conduct, 3) the significance of what was sought by the conduct, 4) the capacities of the actors, and 5) any extenuating factors which might require the actor to proceed with haste, without proper thought. Duncan, supra; Davis v. Vosbein, 12-626 (La.App. 5 Cir. 5/16/13), 119 So.3d 100,102.
In a rear-end collision, Louisiana law provides that the following motorist is presumed negligent. Mart v. Hill, 505 So.2d 1120, 1123 (La.1987). However, when the rear-end collision presumption applies, the following motorist can escape liability by proving that the lead vehicle negligently created a hazard which the following vehicle could not reasonably avoid. Mai Vu v. Artis, 09-637 (La.App. 5 Cir. 12/29/09), 30 So.3d 140, 144. Courts have held that a stopped or slowly moving unlighted vehicle upon the highway at night is an unusual obstruction which the following motorist has no reason to anticipate. Evans v. Olinde, 609 So.2d 299, 302 (La.App. 3 Cir.1992),' writ denied, 616 So.2d 697 (La.1993).
lain this case, the jury was presented with evidence that plaintiffs were traveling at 30 to 35 miles per hour across the Causeway at night due to a . flat tire. Plaintiffs both testified that Seraphin turned the hazard lights on after they experienced the flat tire. However, Klopf testified that he did not see any eai’s, taillights or hazard lights in front of him on the bridge, just before he glanced down at his cell phone for one to two seconds. When he returned his eyes to the road, he testified that all he saw was the white paint of the Aveo immediately in front of him.
Additionally, our review of the record shows that Tamayo was impeached at trial based upon her prior inconsistent deposition testimony. Specifically, Tamayo testified that the Aveo was in good condition, and that she knew the rear taillights were working. On cross-examination, when defense counsel questioned Tamayo about how she knew the taillights were operational that night, Tamayo first explained that she would always check for the reflection of the taillights in the glass door of her home or a stop sign. When questioned further, Tamayo stated that she does not intentionally check for the reflection of her taillights, but that she only sees them as. she’s parking in her driveway. Defense counsel then confronted Tamayo with her deposition testimony wherein she stated that every time she got into the Aveo, she checked for the reflection of the taillights.
The jury was also presented with evidence establishing that the Aveo had been restored by Tamayo’s husband, after having been previously declared a total loss. However, Tamayo’s husband had no documents evidencing the repairs, and he admitted that the Aveo had not been subjected to a brake tag inspection at the time of the accident.
The jury apparently gave more weight to the evidence presented by defen *467 dants in support of their argument that the taillights of the Aveo were not | moperational on the night of the accident. When the findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the findings of fact, for only the fact finder is cognizant of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Johnson v. Lee, 10-439 (La.App. 5 Cir. 11/23/10), 54 So.3d 704, 706. After reviewing the record in its entirety, we cannot say that the jury’s apportionment of fault is clearly wrong or- manifestly erroneous under the facts of this case.
Moreover, we find no merit to plaintiffs’ argument that the sudden emergency doctrine is not applicable to situations where the following motorist is also partially at fault. First, we note that the sudden emergency doctrine is not contained within the jury charges, and therefore, the jury in this case was not charged on the law regarding the sudden emergency doctrine. Nevertheless, we find that “since the passage of the comparative fault law, La. C.C. art. 2323, in 1980, the defense of sudden emergency has been treated simply as one of the factual considerations which is to be used in assessing the degree of fault to be attributed to a party.” Lee v. Davis, 03-997 (La.App. 5 Cir. 12/30/03), 864 So.2d 780, 784. Therefore, even if the jury had been asked to consider the sudden emergency doctrine in this case, that doctrine would not preclude the jury from finding Klopf only 50% at fault for the accident. Therefore, we find that this assignment of error is without merit.

Plaintiffs’ Assignments of Error Numbers Two, Three and Four:

In their second, third and fourth assignments of error, plaintiffs challenge the award of damages to plaintiffs. First, in their second assignment of error, plaintiffs contend that the jury awarded insufficient general damages because they failed to properly apply the Housley presumption. In plaintiffs’ third and fourth | n assignments of error, they contend the trier of fact manifestly erred in the specific damage awards rendered in favor of plaintiffs.
We begin with plaintiffs’ second assignment of error. Plaintiffs allege that defendants failed to overcome the Housley presumption. In Harrington v. Wilson, 08-544 (La.App. 5 Cir. 1/13/09), 8 So.3d 30, 38-39, this Court held as follows regarding the Housley presumption:
In a personal injury action, the plaintiff must prove by a preponderance of the evidence that the claimed injuries resulted from the accident at issue. If the medical testimony establishes that it is more probable than not that subsequent injuries were caused by the trauma suffered in the incident, the burden of proof is satisfied. A presumption of causation will aid a plaintiff in meeting this burden, if before the accident, the injured person was in good health, but, commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be reasonable possibility of a causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973 (La.1991). To rebut this presumption, defendant must show that some other particular incident could have caused the injury in question.
(Emphasis added) (citations omitted). This Court further emphasized that under the Housley presumption, the trier of fact *468 is not precluded from making determinations regarding the credibility of witnesses,. and after weighing and evaluating the medical testimony, the trier of fact is free to accept or reject the opinion expressed by the medical expert. Harrington, 8 So.3d at 39. The application of the Housley presumption is a factual issue, which is reviewed by appellate courts under the manifest error standard of review. Id.
A trial court’s factual findings will not be upset unless they are manifestly erroneous or clearly wrong. Foley v. Entergy Louisiana, Inc., 06-983 (La.11/29/06), 946 So.2d 144, 153 (citing Ferrell v. Fireman’s Fund Insurance Co., 94-1252 (La.2/20/95); 650 So.2d 742, 745). “Under this rule, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, |12but whether the fact finder’s conclusion was a reasonable one.” Foley, 946 So.2d at 153. “If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id. The rule that questions of credibility are for the trier of fact applies equally to the evaluation of expert testimony. Johnson, supra (citing Lasyone v. Kansas City Southern Railroad, 00-2628 (La.4/3/01), 786 So.2d 682, 693).
Plaintiffs contend that the jury failed to properly apply the Housley presumption because defendants failed to introduce any evidence that plaintiffs suffered from preexisting neck or back injuries. Because defendants failed to rebut the Housley presumption, plaintiffs contend that the jury should have presumed that their injuries were caused by the accident, and awarded damages accordingly.
After reviewing the record in its entirety, we find no manifest error in the trier of fact’s application of the Housley presumption. Although we note that the jury technically erred by awarding plaintiffs past medical expenses, but failing to award them any general damages, it does show the jury’s state of mind with respect to causation and damages. In any case, the trial court properly granted plaintiffs’ motion for JNOV based upon this error, and awarded plaintiffs general damages. As we noted above, under the Housley presumption, the trier of fact is not precluded from making determinations regarding the credibility of witnesses, or from accepting or rejecting the opinion expressed by the medical expert.
Here, the record shows that plaintiffs’ medical experts and defendants’ medical experts varied greatly in their opinions as to the severity of both Tamayo’s and Sera-phin’s injuries. In addition, the jury was also presented with the surveillance videos of both plaintiffs performing activities which seemingly 11scontradicted the physical limitations described to their physicians at that time. Defendants’ expert, Dr. Thomas, also testified that Tamayo appeared to exhibit signs of malingering, as evidenced by her non-anatomical responses of jumping in pain when he lightly touched her skin, and alternating a “locked-knee” limp from one leg to the other. Although we note that plaintiffs testified that they have “good” days where they can perform more strenuous activities, we find this evidence calls for factual findings based upon credibility determinations made by the trier of fact. After reviewing the evidence, we find no error in the trier of fact’s application of the Housley presumption as it relates to causation and to plaintiffs’ award of damages.

General Damages

For the same reasons as stated above, we find no error in the trial court’s partial grant of plaintiffs’ motion for JNOY *469 awarding general damages, as set forth in their third and fourth assignments of error.
In Stoll v. Allstate Ins. Co., 11-1006 (La.App. 5 Cir. 5/8/12), 95 So.3d 1089, 1095, citing Joseph v. Broussard Rice Mill, Inc., 00-0628 (La.10/30/00), 772 So.2d 94, 99, this Court set forth the criteria to be used in determining whether JNOV is proper:
JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that when there is a jury, the jury is the trier of fact.
| u“There is no question that the abuse of discretion standard of review applies when an appellate court examines a fact finder’s award of general damages.” Wainwright v. Fontenot, 2000-0492 (La.10/17/00), 774 So.2d 70, 74. The assessment of the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. Id. “As such, ‘the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact.’ ” Id. (citing Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993)).
Here, after the jury only awarded each plaintiff special damages for past medical expenses in the amount of $15,000, the trial court granted plaintiffs’ motion for JNOV in part and awarded Tamayo and Seraphin $35,000 and $19,500 in general damages, respectively. After reducing plaintiffs’ awards in accordance with Klopf s 50% fault allocation, the trial court issued a judgment on their motion for JNOV awarding Tamayo and Seraphin $17,500 and $9,750 in general damages, respectively.
Plaintiffs contend that Tamayo established that she sustained a herniated lumbar disc, a bulging lumbar disc, and three bulging cervical discs, and Seraphin established that she sustained two bulging lumbar discs and soft tissue injuries to her cervical spine. Plaintiffs heavily rely on their experts’ interpretation of their MRI results for these findings. However, defendants’ expert testified that he interpreted plaintiffs’ MRI results as normal, and that his physical examinations of plaintiffs were similarly normal. Given that the evidence does not clearly support the extent of the injuries claimed by plaintiffs, we cannot say that the trial court’s 11fiaward of $35,000 and $19,500 in general damages to Tamayo and Seraphin, respectively, was an abuse of discretion.

Special Damages

Plaintiffs further allege in their third and fourth assignments of error that the trial court erred by failing to increase the jury’s award of special damages for past medical expenses, and by failing to *470 award plaintiffs special damages for future medical expenses.
A plaintiff may recover past medical expenses that he incurs as a result of an injury due to the fault of another. Harrington, 8 So.3d at 40. To recover medical expenses, the plaintiff must prove that, more probably than not, the medical treatment was necessitated by the accident. Id. at 40-41. A jury errs by not awarding the full amount of medical expenses incurred as a result- of injuries caused by the accident when the record demonstrates that the victim has proven them by a preponderance of the evidence. Gunn v. Robertson, 01-347 (La.App. 5 Cir. 11/14/01), 801 So.2d 555, 564, writ denied, 02-0170 (La.3/22/02), 811 So.2d 942, and writ denied, 02-0176 (La.3/22/02), 811 So.2d 942.
In this case, plaintiffs - introduced into evidence a summary of past medical expenses for Tamayo and Seraphin totaling $30,049 and $27,283, respectively. After hearing all of the evidence, the jury awarded Tamayo and Seraphin approximately one-half of their claimed past medical expenses, or $15,000 to each plaintiff. We find that this award suggests that the jury did not believe that all of plaintiffs’ post-accident treatment was causally connected to the accident. The jury’s award of $15,000 to each plaintiff for past medical expenses is- consistent with a finding that plaintiffs suffered some injuries from the accident, but that they were not entitled to recover all of their requested expenses. After reviewing all of the evidence, we find that reasonable persons in the exercise of impartial judgment 11 (¡might reach different conclusions as to plaintiffs’ claim for past medical expenses. Accordingly, we find no error in the trial court’s denial of plaintiffs’ motion for JNOV as to past medical expenses.
In order to recover future medical expenses, the plaintiff must prove that these expenses will be necessary, and inevitable. Gunn, supra. Future medical expenses must be established with some degree of certainty and must be supported with medical testimony and estimation of probable costs. Id. The plaintiff bears the burden of proving entitlement to future medical expenses by a preponderance of the evidence. Dufrene v. Gautreau Family, LLC, 07-467 (La.App. 5 Cir. 2/22/08), 980 So.2d 68, 83, writ denied, 08-0629 (La.5/9/08), 980 So.2d 694, and writ denied, 08-0628 (La.5/9/08), 980 So.2d 698. A fact-finder may accept or reject the opinion expressed by an expert, in whole or in part. Id.
Plaintiffs presented the testimony of Dr. Bartholomew and Dr. Lesser in support of their claims for future medical expenses. Plaintiffs introduced into evidence the reports of Dr. Bartholomew which recommended that Tamayo continue to treat conservatively with Chiropractor Haydel, and that she undergo an IDET procedure. Plaintiffs argue that Chiropractor Haydel’s past medical bill for two years.of treatment rendered to Tamayo totaling $9,756 provides an estimation of the probable costs necessary for her future treatment. As for Seraphin, plaintiffs contend that Dr. Lesser’s report recommended that she continue to seek treatment for chronic pain management totaling $8,000 a year.
Given that the medical evidence introduced by plaintiffs was highly contested by defendants, we find that reasonable persons in the exercise of impartial judgment could reach different conclusions as to plaintiffs’ claim for future medical expenses. Accordingly, we find that the trial court properly denied plaintiffs’ motion for JNOV as to their claim for future medical expenses.
*471 | itPlaintiffs’ Assignments of Error Numbers Five and Six:
In their fifth and sixth assignments of error, plaintiffs contend that the jury erred in accepting the testimony of defendants’ expert, Dr. David Aiken, and in considering the video surveillance of Tamayo and Seraphin.
As we have set forth above, credibility determinations are for the trier of fact, and this rule applies equally to the evaluation of expert testimony. Johnson, supra. A trial court’s finding of fact may not be reversed absent manifest error or unless clearly wrong. Miller v. Clout, 03-0091 (La.10/21/03), 857 So.2d 458, 462. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id.
Applying this jurisprudence, we cannot say that the jury was manifestly erroneous in accepting the testimony of Dr. Aiken, or in considering the surveillance tapes of plaintiffs. Plaintiffs argue that the positive discogram results that were taken after Dr. Aiken’s evaluation of Tamayo prove that she did in fact sustain the injuries she complained of, and that Dr. Aiken’s opinion to the contrary should have been disregarded as erroneous. With respect to the surveillance videos, plaintiffs contend that the videos should have been disregarded by the jury because plaintiffs both testified that they have “good” days on which they can perform tasks without restriction. As such, plaintiffs allege that videos contain nothing that could be used to impeach their testimony.
We find plaintiffs’ argument to be without merit. The jury heard all of the relevant testimony first-hand, including testimony from defendants’ experts that discograms rely on a subjective element and are not purely objective tests, as well as evidence that plaintiffs performed tasks in the videos that were contrary to the | ^limitations communicated to their physicians at the same time. Considering the extent of conflict in the testimony presented by plaintiffs and defendants, we cannot conclude that the jury’s factual findings and credibility determinations are unreasonable. These assignments of error are without merit.

Plaintiffs’ Assignment of Error Number Seven:

In their final assignment of error, plaintiffs contend that the trial court erred in failing to grant their motion for new trial based upon newly discovered evidence, consisting of cell phone pictures of the Aveo which they claim depicted the taillights working after the accident.
Under La. C.C.P. art. 1972(2), a new trial shall be granted when the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial. In order to meet his or her burden of proof on a motion for new trial on the basis of newly-discovered evidence, the moving party must prove: (1) that the evidence was discovered after the trial; (2) that the new evidence is not cumulative; (3) that the new evidence would tend to change the result of the case; and (4) that the new evidence could not have been discovered with due diligence before the trial was completed. Holloway Drilling Equip., Inc. v. Bodin, 12-355 (La.App. 3 Cir. 11/7/12), 107 So.3d 699, 709.
The jurisprudence accords the trial court great discretion in granting a new trial. Warner v. Carimi Law Firm, 98-613 (La.App. 5 Cir. 12/16/98), 725 So.2d 592, 597, writ denied, 99-0466 (La.4/1/99), *472 742 So.2d 560. Appellate courts will not disturb a decision of the trial court denying a motion for new trial unless there has been a clear abuse of discretion. Id.
In their motion for new trial, plaintiffs alleged that the pictures of the Aveo, which they attached to their motion, were contained on a cell phone that was lost 119after the accident. Plaintiffs alleged that despite their best efforts, they were unable to locate the phone until after the trial.
We find that plaintiffs have failed to meet their burden under La. C.C.P. art. 1972(2). Plaintiffs attached an affidavit of Tamayo’s husband, Cruz, attesting that “much effort was spent attempting to locate the mobile phone.” We find that this singular statement is insufficient to meet plaintiffs’ burden of establishing that the cell phone could not have been discovered with due diligence before the trial was completed. See La. C.C.P. art. 1972(2). Additionally, we have reviewed the cell phone pictures attached to the motion, and find plaintiffs have failed to show that the new evidence would tend to change the result of the case, as the pictures do not clearly show that the taillights were in fact operational after the accident. Therefore, we find no abuse of discretion in the trial court’s denial of plaintiffs’ motion for new trial.
CONCLUSION
For the foregoing reasons, we affirm the May 21, 2013 judgment of the trial court.

AFFIRMED