| | |
|---|---|
| REBECCA AND JEREMY TRIPP | NO. 23-CA-487 |
| VERSUS | FIFTH CIRCUIT |
| DG LOUISIANA, LLC D/B/A DOLLAR GENERAL STORES, ABC INSURANCE, AND SHAUNTEL STRAUGHTER | COURT OF APPEAL |
| | STATE OF LOUISIANA |

ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 84,902, DIVISION "E"
HONORABLE TIMOTHY S. MARCEL, JUDGE PRESIDING

April 24, 2024

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Stephen J. Windhorst

**AFFIRMED**
 **SMC**
 **JGG**
 **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
DG LOUISIANA, LLC D/B/A DOLLAR GENERAL STORES
Stephen C. Resor
Amy Dunn Hotard
Stephannie M. England
Gregory Sauzer

COUNSEL FOR PLAINTIFF/APPELLEE,
REBECCA AND JEREMY TRIPP
Marcus J. Plaisance
Mark D. Plaisance
David A. Thomas
Kelley R. Dick, Jr.
Brad W. Cranmer
Collin R. Melancon
Scott M. Mansfield

**CHEHARDY, C.J.**

Defendant, DG Louisiana, LLC d/b/a Dollar General Stores, appeals the judgment awarding $614,655.23 in total damages after the jury determined that plaintiff, Rebecca Tripp's accident at a Dollar General Store in 2017 caused injuries to her lower back, sacrum, and left leg. The plaintiffs, Rebeca and her husband Jeremy Tripp, have answered the appeal, arguing that the $236,000 general damage award was too low when compared with awards for similar injuries. The Tripps further contend that the jury erred in declining to award damages for future medicals, given Mrs. Tripp's alleged need for continuing medical treatment, in declining to award damages for future loss of enjoyment of life, and in declining to award loss of consortium damages to Mr. Tripp. For the reasons that follow, we affirm the trial court's judgment.

Rebecca Tripp fell off of a toilet at a Dollar General Store on River Road in St. Rose in July of 2017.[1] Mrs. Tripp stated that when she began to sit down, the toilet seat was not attached to the toilet. She and the toilet seat slid onto the floor, resulting in injuries to her leg and back.

In July of 2018, Mr. and Mrs. Tripp filed a petition against DG, its insurer, and the Dollar General store manager, Ms. Shauntel Straughter, seeking compensatory and special damages for Mrs. Tripp's alleged injuries and future medical care, and general damages for her past and future pain and suffering, emotional distress, and loss of enjoyment of life, and for Mr. Tripp's loss of consortium.[2]

---

[1] Throughout this opinion we refer to the defendant as "DG" and to the site of Mrs. Tripp's accident as "Dollar General."

[2] Ms. Straughter was dismissed from the case at the beginning of trial.

At the beginning of the four-day trial, the trial court explained to the jury that DG had stipulated to liability,[3] and the jury's role was to determine the nature and extent of plaintiff's injuries caused by the incident.

Mrs. Tripp testified that after her fall, she immediately reported the incident to the manager, who asked her to fill out a customer incident report. On the report, Mrs. Tripp stated that she fell on her "back and butt." Under "Nature of Injury," she wrote: "I'm sure just bruised." Mrs. Tripp then proceeded to a previously scheduled appointment with her oncologist to review her latest lab results.[4] Ms. Tripp explained that the appointment lasted approximately five minutes, and she did not report the fall at Dollar General to her oncologist.

That night, Mrs. Tripp took Advil for pain. She also used a heating pad for relief. On August 16, 2017, after a month without significant relief, Mrs. Tripp saw her primary care physician, Dr. Brandi Basso, complaining of back and tailbone pain. Dr. Basso diagnosed acute bilateral low back pain without sciatica; prescribed Mobic, an anti-inflammatory medication; and ordered X-rays. At her August 30, 2017 follow-up visit, Dr. Basso prescribed physical therapy (PT).

A few days later, Mrs. Tripp saw Dr. Basso again for an upper respiratory infection. Her condition worsened and she was diagnosed with pneumonia and subsequently hospitalized for five days. By the time Mrs. Tripp's pulmonologist released her, Dr. Basso's PT orders had expired. Dr. Basso reinstituted the orders and on October 25, 2017, Mrs. Tripp began PT two to three times a week. She was discharged from PT on January 25, 2018, but she continued PT exercises at home, which helped but did not fully relieve her pain.

---

[3] Ms. Straughter testified at trial that a work order had been placed with DG for the broken toilet seat a week before the accident.

[4] Mrs. Tripp is a breast cancer survivor who also has a past history of endometriosis, chronic stomach issues, and urinary tract infections, which in some cases have caused back pain.

Mrs. Tripp saw Dr. Basso again on February 6, 2018 for a urinary tract infection (UTI). She then saw her urologist, Dr. Graham, who prescribed antibiotics for her UTIs. An ultrasound also revealed a cyst in her abdomen, and Mrs. Tripp was concerned that she may have cancer again, but additional testing determined that she did not. Mrs. Tripp testified that her back continued hurting, but due to the cancer scare and her other health issues, she did not seek treatment for her back pain at this time because she was trying to focus on one thing at a time.

Mrs. Tripp's urologist released her in June 2018, and in July she sought additional treatment for her back pain. She met with Dr. Matthew LaFleur's physician's assistant, Mr. Marc Pitre, who felt that the majority of her pain was coming from the sacroiliac (SI) joint. MRI results suggested sacroiliitis with additional pain from degenerative disc changes in the lumbar region. Mr. Pitre thus recommended SI joint injections, which were administered by Dr. Rochelle. Mrs. Tripp received some short-term pain relief from two rounds of SI joint injections; thus, it was recommended that Dr. LaFleur perform an SI joint fusion surgery.

Dr. LaFleur performed SI fusion surgery on Mrs. Tripp in July 2019. A few days later, upon realizing that a screw used in that surgery was affecting a nerve in her leg, Dr. LaFleur performed a second surgery to replace the screw with a shorter one. Mrs. Tripp testified that recovery from the surgeries was long—six weeks without weight bearing on her right side—which required a lot of help from her husband. Mrs. Tripp stated that the surgery helped with the SI joint pain, but approximately a month after finishing the post-op PT, she was experiencing back pain again, this time with radicular symptoms, meaning the pain was radiating down her leg.

Mrs. Tripp again sought pain relief. Dr. Rochelle administered two rounds of transforaminal epidural steroid injections (ESI), which provided some temporary

relief. Mr. Pitre and Dr. Rochelle thought she was a good candidate for L4-L5 fusion. But Mrs. Tripp wanted a second opinion, so she saw Dr. Fautheree in Baton Rouge at the NeuroMedical Center. Dr. Fautheree performed the L4-L5 fusion. Mrs. Tripp testified that the surgery was "successful" and indicated that she was "mostly pain free" unless she did too much physical activity. Mrs. Tripp testified that Dr. Fautheree suggested she may need another surgery within 20 years because the discs adjacent to her L4-L5 fusion would probably weaken. She stated that she definitely would go forward with that surgery if she needed it.

The jury also heard testimony from Mrs. Tripp's treating physician, physiatrist, and surgeons: Dr. Brandi Basso, her primary care doctor; Dr. Jared Rochelle, who administered various diagnostic and therapeutic injections; Dr. Matthew LaFleur, who performed the SI joint fusion; and Dr. Gregory Fautheree, who performed her lumbar fusion.

Dr. Basso testified that Mrs. Tripp reported lower back pain and tailbone discomfort during her August 16, 2017 visit. Dr. Basso agreed that it was normal for a patient who was experiencing pain after an accident to wait about a month to see a physician, and conservative treatment was appropriate. Dr. Basso testified that degenerative changes appearing on an X-ray taken before an accident or injury do not mean that there was no injury as a result of the accident; rather, an accident can cause preexisting degenerative changes to become symptomatic. In her medical opinion, based on her treatment of Mrs. Tripp, Dr. Basso testified it was more likely than not that the accident at Dollar General caused her injuries.

Dr. Jared Rochelle is a physiatrist/pain-management physician who testified that he saw Mrs. Tripp for the first time on August 2, 2018, a little over a year after the accident. He administered the first round of SI joint injections on August 6 and

the second round of SI joint injections on October 22, 2018.[5] Mrs. Tripp reported experiencing at least 70% overall improvement after the first round of injections, and 75-80% improvement after the second round, but the relief deteriorated or diminished after a couple of months. She received no relief from intermittent bilateral facet injections. Dr. Rochelle opined that Mrs. Tripp had "more than one pain generator," meaning there was more than one location or source of her pain.

Dr. Rochelle saw Mrs. Tripp again on February 5, 2019, when she was referred for radio frequency ablation (RFA) of the SI joint, and he performed a procedure on March 25 to see if she would be a candidate for more permanent RFA.[6] Dr. Rochelle did not see Mrs. Tripp again until February 5, 2020, when she was referred to him for transforaminal epidural steroid injections (ESIs) at L4 and L5.[7] At that time, Mrs. Tripp already had undergone the SI joint fusion with Dr. LaFleur. Dr. Rochelle administered the ESIs on February 13 and March 9, 2020. Approximately one week after the first round, she reported 70% improvement for about one week, and about 60-70% pain relief in the first week after the second round, but then the pain returned.

Dr. Rochelle then reviewed Mrs. Tripp's MRIs from 2018 and 2020. He indicated that the July 2018 MRI showed some "end plate changes" and broad-based disc bulging at L4-L5 consistent with degenerative disc changes. The 2020 MRI showed that her degenerative disc disease had progressed.

Dr. Rochelle testified that it is not unusual for him to see patients a year or more after some trauma. He further testified that in his opinion, a fall from a toilet

---

[5] Dr. Rochelle explained that the sacroiliac (SI) joint is the back joint where the sacrum meets the iliac crest, in the pelvis region. SI joint injections are meant to help diagnose the area from which the pain emanates; they do not provide long-term relief, only temporary relief, and help to determine the next steps in treating the patient.

[6] Mrs. Tripp reported experiencing approximately 80% relief. Dr. Rochelle stated that this made her a good candidate for RFA and suggested that the SI joint was the primary pain generator.

[7] Dr. Rochelle stated that these injections are for radicular (radiating into the extremities) pain, which she had not been experiencing when he had seen her in the past.

seat could cause low back pain like Mrs. Tripp's, especially in someone who is a little heavier.

Dr. Matthew LaFleur, an orthopedic surgeon at North Oaks Orthopedic Spine Clinic, testified via video deposition. Upon review of Mrs. Tripp's reported short-term relief from the SI joint injections, Dr. LaFleur agreed that Mrs. Tripp was a good candidate for SI joint fusion surgery, which he performed on July 25, 2019, and performed a second surgery a few days later to replace a screw in the first surgery with a shorter screw. When asked whether Mrs. Tripp's SI joint fusion surgery was necessitated by the fall at Dollar General, Dr. LaFleur explained:

> I don't have any evidence that she had any significant back pain or sacroiliac pain prior to this event. The event that she described was falling on her hip on that side, which is an excellent mechanism to cause this problem. And the sacroiliac joint is commonly damaged by either a rotational force or a lateral compression force, so it's certainly more plausible than not, more likely than not that her sacroiliac pain and subsequent need for surgery was caused by this injury. I can't think of a better explanation for it.

When asked about Mrs. Tripp's failure to report any type of fall or injury until a month after the accident, Dr. LaFleur stated that this did not contradict his opinion that the SI joint problem was related to her accident at Dollar General. Dr. LaFleur further explained on cross-examination:

> The fact that she didn't become symptomatic immediately is not, really doesn't disqualify this accident causing it. She could have had an injury to the sacroiliac joint, which slowly became worse over time, became more symptomatic over time as she put more stress on it. … I think the most likely thing is the fall caused the pain.

Finally, Dr. LaFleur stated: "Based on everything I've read and based on my conversations with the patient, it seems more likely than not that this injury was the cause of her sacroiliitis."

Dr. Gregory L. Fautheree is a neurosurgeon who performed Mrs. Tripp's L4-L5 fusion. He first saw in her in July 2020, noting that she had experienced

progressive back pain reportedly as a result of the incident at Dollar General in 2017. Because he felt that Mrs. Tripp had exhausted all non-operative treatments, Dr. Fautheree recommended anterior lumbar interbody fusion at L4-L5. Dr. Fautheree believed the fall aggravated her preexisting degenerative disc disease at L4-L5 and made it symptomatic. He did not believe that the SI joint was the cause of Mrs. Tripp's pain.

Dr. Fautheree explained that any time part of the spine is fused, there is approximately a 2-½% per year "risk of the level above or below getting an accelerated wear and tear more than it would have if the fusion had not been performed." Whether Mrs. Tripp needs another surgery "will depend on how long she lives and how much stress and strain she puts on her back until the day that she dies." Given her age, Dr. Fautheree testified that it was "highly likely" and "more probable than not" that Mrs. Tripp will need future medical treatment for her back, which could require injections or surgery.

Dr. David Aiken, an orthopedic surgeon at East Jefferson Hospital, performed a one-time medical examination on Mrs. Tripp for defendants on August 18, 2020, before Mrs. Tripp's lumbar surgery.[8] Dr. Aiken testified that he also reviewed Mrs. Tripp's prior imaging and medical records. He stated that the 2016 CT scan, the 2017 post-accident imaging, and the July 2018 MRI scan all showed normal sacroiliac joints, but also showed degenerative collapse at L4-L5. Dr. Aiken believed that Mrs. Tripp sprained her back when she fell off the toilet and the sprain likely resolved itself by April of 2018, based on the fact that Mrs. Tripp denied back pain to a nurse practitioner at that time.[9]

---

[8] Dr. Aiken stopped performing spine surgeries in 2003, but has continued performing general orthopedic surgery, such as hip and knee replacements. He was accepted as an expert in the field of orthopedic surgery.

[9] Dr. Aiken was relying upon the medical records of Mrs. Tripp's April 4, 2018 visit to a Nurse Practitioner, April McIntyre, who indicated that Mrs. Tripp was "negative for back pain." The medical records indicate that NP McIntyre was seeing Mrs. Tripp to prescribe medication for anxiety and for acid reflux.

Dr. Aiken further testified that he did not believe the SI joint was injured from Mrs. Tripp's fall. He also agreed with Dr. Fautheree's opinion that the SI joint was not the pain generator, and he did not believe that the SI joint surgery was necessary, as ultimately it did nothing to help with Mrs. Tripp's pain.

Dr. Aiken opined that Mrs. Tripp's lumbar surgery also was not related to the Dollar General incident, because her medical records indicated that she had gotten better by April 2018. He also did not believe that she would need a future adjacent-disc surgery. "[I]f you have a successful surgery, more probable than not you don't need any more surgery." On cross-examination, Dr. Aiken acknowledged that he had not reviewed Mrs. Tripp's medical records from her lumbar surgery and did not review Dr. Fautheree's deposition or operative report.

The parties stipulated, and the jury was informed, that Dr. Aaron Wolfson would have testified at trial that Mrs. Tripp more likely than not will need future medical treatment, including a future adjacent lumbar surgery, per Dr. Fautheree's recommendation. Further, Dr. Wolfson would have testified that the current value of future lumbar surgery and associated costs would be between $118,049.17 and $124,038.02. Dr. Randy Rice, an economist, presented evidence regarding the cost of lumbar surgery in 20 years.[10]

Mr. Jeremy Tripp, Rebecca's husband, testified that they have been married for 28 years. He observed that she suffered from back pain since her incident in July 2017. He testified that she initially treated with a lot of over-the-counter pain medications and used a heating pad a lot. Since the accident, she could not ride in a car for very long periods without stopping because it hurt her back, which curtailed their driving vacations. Mr. Tripp stated that at the time of trial, his wife was a lot better than she had been, but her back still bothers her some, and she is very

---

[10] According to Dr. Rice, the present value of plaintiff's lumber surgery and its associated costs, if it were to occur in 20 years, is between $130,252 and $136,828.

cautious about her activities, because she "[j]ust doesn't want to have to have another surgery anytime soon." Since the accident, she could not do any of the yard work that she used to do, such as riding on the lawn mower or carrying a weed eater. At the time of trial, he took care of all the yard chores and helped with the laundry. He stated that after her SI surgery, for approximately three months, she needed help in and out of the shower and help with sitting on the toilet. She needed essentially the same help after the lumbar surgery, including help in and out of bed.

At the conclusion of the four-day trial, the jury awarded plaintiffs a total of $614,655.23 in general and special damages, itemized as follows:

$200,000 for General Damages (past and future pain and
     suffering, mental anguish, emotional distress)
$36,000 for Past Loss of Enjoyment of Life
$0 for Future Loss of Enjoyment of Life
$378,655.23 for Past Medical Expenses
$0 for Future Medical Expenses
$0 for Loss of Consortium

The trial court's judgment included all recoverable costs, as well as judicial interest on the award from the date of judicial demand until the judgment is satisfied.

On appeal, DG argues Mrs. Tripp's back injuries are not related to the accident, and thus the jury manifestly erred in determining that the incident caused her to undergo two fusion surgeries. DG contends the jury should not have awarded specific damages for her 2019 SI fusion surgery and her 2020 lumbar fusion surgery. DG also argues the jury abused its discretion in awarding $236,000 in general damages.

As to causation, DG argues that Mrs. Tripp, who has an extensive history of pre-existing medical issues, fell only 15 inches from the toilet to the floor, which caused a soft-tissue injury that had abated by January 2018. DG claims that this incident could not have caused her more severe, extensive spinal injuries, because, among other things, Mrs. Tripp did not complain to other medical providers about

her back pain, and she waited a month after the incident to seek medical intervention from her primary care physician, Dr. Basso. DG further argues that Mrs. Tripp did not begin physical therapy until several months after Dr. Basso had prescribed it.

DG also notes that imaging taken in 2016, long before Mrs. Tripp's accident at Dollar General, showed normal SI joints, but also showed evidence of degenerative disc disease at L4-L5, the site of her lumbar fusion surgery. Additional imaging taken a few weeks after the accident revealed the same findings as the 2016 imaging—normal SI joints and degenerative disc disease at L4-L5. According to DG, this suggests that her lumbar fusion surgery was unrelated to the accident and unnecessary. DG further contends that post-accident imaging shows no injury to the SI joints; thus, the objective evidence does not support a finding that her SI joint fusion surgery was causally related to the accident by a preponderance of the evidence.

Finally, DG suggests that because Mrs. Tripp did not seek treatment for her back pain after her release from physical therapy in January 2018 until July 9, 2018, her back pain was not the result of her July 2017 accident. DG thus argues that the general damage award should be reduced to $21,000 and the award for special damages should be reduced to $6,064.06, which DG contends would compensate Mrs. Tripp for her soft-tissue injury.[11]

In their answer to DG's Appeal, the Tripps argue that, due to Mrs. Tripp's continuing need for medical treatment and a possible future surgery, the jury manifestly erred in declining to award damages for future medicals and future loss of enjoyment of life. The jury further erred, they argue, in refusing to award loss of consortium damages to Mr. Tripp. Plaintiffs also contend the $200,000 general

_____

[11] DG's brief suggests that Mrs. Tripp's special damages should be reduced to $411.00 for treatment with Dr. Basso; $63.00 for an X-ray; and $5,590.06 for physical therapy from October 2017 to January 25, 2018, for a total of $6,064.06.

damage award for past and future physical pain and suffering, mental anguish, and emotional distress, and the $36,000 general damage award for past loss of enjoyment of life, were abusively low when compared to awards in similar cases.

We first address causation. The plaintiffs bear the burden of proving every element of their case by a preponderance of the evidence, and must show that it is more likely than not that the harm was caused by the tortious conduct of the defendant. *LaSalle v. Benson Car Co., Inc.*, 00-1459 (La. App. 5 Cir. 1/30/01), 783 So.2d 404, 408.

A court of appeal may not set aside a jury's factual findings absent manifest error, or unless those findings are clearly wrong. *Tromatore v. Jefferson Parish Hospital Serv. Dist.*, 21-551 (La. App. 5 Cir. 5/26/22), 341 So.3d 1269, 1275. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). A factfinder's decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous or clearly wrong. *Id.* at 845. Where there is a conflict in the testimony, a trial court's reasonable evaluations of credibility and inferences of fact should not be disturbed upon review, even if they differ from those of the appellate court. *Hallal v. Eversmeyer*, 20-253 (La. App. 5 Cir. 12/23/20), 309 So.3d 863, 867, *writ denied*, 21-103 (La. 3/9/21), 312 So.3d 584.

To reverse the trial court's judgment entered on the jury's verdict, we would have to find that the record fails to support the jury's determination that the accident at Dollar General resulted in Mrs. Tripp's two fusion surgeries. We make no such finding here.

The jury heard evidence from Mrs. Tripp's surgeons, Dr. LaFleur and Dr. Fautheree, who testified that the 2017 incident more likely than not caused Mrs. Tripp's injuries, necessitating her SI joint fusion surgery (Dr. LaFleur) and her

lumbar fusion surgery (Dr. Fautheree). Dr. LaFleur stated: "She could have had an injury to the sacroiliac joint, which slowly became worse over time, became more symptomatic over time as she put more stress on it. … I think the most likely thing is the fall caused the pain." Similarly, Dr. Fautheree believed that Mrs. Tripp's need for lumbar surgery was caused by her fall at Dollar General, which aggravated her preexisting degenerative disc disease at L4-L5 and made it symptomatic.

The jury evidently rejected DG's arguments that Mrs. Tripp's gaps in treatment for her back pain, as well as her failure to report back pain at every medical visit, constituted evidence that her pain had abated and her surgeries were unrelated to her accident. Mrs. Tripp testified that her back pain continued since her accident, and evidence in the record, in addition to the testimony from Mrs. Tripp, provide reasons for her gaps in treatment for back pain, such as her hospitalization for pneumonia in the fall of 2017 and her subsequent concern that an abdominal mass may be cancerous in early 2018.

Moreover, the jury chose to believe the testimony of Dr. LaFleur and Dr. Fautheree regarding causation rather than the testimony of Dr. Aiken, who evaluated Mrs. Tripp one time, for defendants in conjunction with this litigation. The jury also apparently rejected Dr. Fautheree's statements indicating that he did not believe Mrs. Tripp's pain emanated from her SI joint and did not believe that her SI joint fusion surgery, which Dr. LaFleur performed, was necessary. In light of Dr. LaFleur's testimony that it was more probable than not her SI surgery was necessitated by her fall, and Dr. Rochelle's testimony that that SI joint was indicated as being a pain generator, we cannot say the jury manifestly erred in concluding that both the SI joint fusion surgery and the lumbar fusion surgery were caused by the incident at Dollar General. As such, we reject DG's plea to reverse the jury's findings as to causation. *See*, *e.g.*, *LaSalle v. Benson Car Co., Inc.*, 783

So.2d at 406 (finding trial court's determination that vehicular accident caused plaintiff's subsequent psychosis, based on psychiatrist's testimony that the condition was more likely than not caused by the vehicular accident, was not manifestly erroneous).

We next address the parties' arguments related to damages. Special damages are defined as those that must be specially pled or that have a "ready market value;" in other words, the amount that supposedly can be determined with relative certainty. *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70, 74. The plaintiff's past medical expenses incurred as a result of the tort are considered special damages. *Id.*; *see also Tamayo v. American Nat'l Gen'l Ins. Co.*, 14-130 (La. App. 5 Cir. 9/24/14), 150 So.3d 459, 470. The test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved, through medical testimony, that it was more probable than not that the subsequent injuries were caused by the accident. *Mann v. Louisiana-1 Gaming*, 21-83 (La. App. 5 Cir. 12/15/21), 334 So.3d 894, 900. An award of special damages is reviewed for manifest error. *Kaiser v. Hardin*, 06-2092 (La. 4/11/07), 953 So.2d 802, 810.

General damages are those that cannot be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style that cannot be measured in definite monetary terms. *Jones v. Market Basket Stores, Inc.*, 22-841 (La. 3/17/23), 359 So.3d 452, 464. General damage awards are reviewed for an abuse of discretion. *LaSalle*, 783 So.2d at 409; *see also* La. C.C. art. 2324.1 ("In the assessment of damages in cases of offenses …, much discretion must be left to the judge or jury."); *Jones*, 359 So.3d at 464 (acknowledging that vast discretion is accorded the trier of fact in fixing general damages, and appellate courts should rarely disturb such awards). An appellate court may not overturn an

award of general damages unless it is so out of proportion to the injury that it shocks the conscience. *King v. Nat'l Gen. Assurance Co.*, 18-281 (La. App. 5 Cir. 12/12/18), 260 So.3d 1298, 1309.

When determining whether the trier of fact abused its discretion, the appellate court must consider relevant prior general damage awards as guidance, whether the court is evaluating for excessiveness or for the insufficiency of a particular award. *Pete v. Boland Marine & Mfg. Co., LLC*, 23-170 (La. 10/20/23), --- So.3d ---, 2023 WL 6937381, at *1, *5. The Louisiana Supreme Court further explains in *Pete*: "The inherently subjective nature of the abuse of discretion standard in the context of reviewing general damage awards compels that some measure of objectivity be incorporated into the determination of an award's reasonableness, so that there is some standard for comparison." *Id.* at *1. Yet, a review of prior awards is not the only factor to be considered; it is a starting point, and no two cases will be identical. *Id.* at *5. Determining whether the trier of fact abused its discretion remains the initial inquiry, but to evaluate the issue, an appellate court is to include a consideration of prior awards in similar cases, as well as the particular facts and circumstances of the case under review. *Id.* at *6. "It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Id.* at *5 (citing *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La. 1993)).

DG contends the jury's awards of $378,655.23 in special damages and $236,000 in general damages were excessive and should be reduced to an amount consistent with an individual who experienced a soft-tissue injury requiring one year of treatment. On the other hand, the Tripps argue that the jury's $236,000 general damage award was too low, and the jury erred in failing to award future

medicals, future loss of enjoyment of life, and loss of consortium damages to Mr. Tripp.

With regard to special damages, we already have determined that the jury did not manifestly err in finding that the Tripps met their burden of proving causation. The Tripps presented voluminous medical records and other evidence outlining the costs of Mrs. Tripp's medical treatments and surgeries, which the jury determined were related to the July 2017 accident. The jury's award for special damages directly reflects the totality of medical expenses that plaintiffs introduced into the record as Plaintiffs' Exhibit 2.[12] DG has presented no evidence to suggest that these figures were erroneous; it merely reargues a lack of causation. As such, we find no manifest error in the jury's special damage award of $378,655.23.

With regard to general damages, the jury interrogatories show that the jury awarded Mrs. Tripp $200,000 for "[p]ast and future physical pain and suffering, mental anguish, emotional distress," and awarded $36,000 for "[p]ast loss of enjoyment of life." The jury awarded nothing for Mrs. Tripp's future medical expenses or future loss of enjoyment of life, and nothing to Mr. Tripp for loss of consortium.

The Tripps point to this Court's ruling in *Dufrene v. Gautreau Family, LLC*, 07-467 (La. App. 5 Cir. 2/22/08), 980 So.2d 68, which affirmed a total general damage award of $2.25 million, based upon $312,000 in past medical expenses and

---

[12] Plaintiffs' Exhibit 2, entitled "Rebecca Tripp – Medical Bill Summary" stated:

| | |
|---|---|
| 1. Care Physical Therapy | $ 10,915.00 |
| 2. North Oaks Hospital | $194,000.19 |
| 3. North Oaks Specialty Clinics | $ 72,456.48 |
| 4. CVT Surgical Center | $ 3,730.00 |
| 5. The NeuroMedical Center | $ 15,403.13 |
| 6. Spine Hospital of Louisiana | $ 69,918.79 |
| 7. Lewy Physical Therapy | $ 10,395.00 |
| 8. DXI Health Solutions | $ 601.64 |
| 9. Pinnacle Anesthesia, LLC | $ 1,235.00 |
| **TOTAL:** | **$378,655.23** |

$250,000 in future medical expenses.[13] The plaintiff in *Dufrene* was described as an "active 35-year-old" at the time of the accident who developed leg and back pain after an accident that "severely limited" her activities. She required ongoing injections and chiropractic care and would likely experience pain for the rest of her life.

The Tripps contend that because this Court affirmed a $2.25 million general damage award in *Dufrene* for arguably fewer damages approximately 15 years ago, the $200,000 award in the present case was abusively low. Mrs. Tripp argues that she has endured more than 25 doctor visits, 90 treatments with physical therapists, six rounds of injections into her spine, and three surgeries: (i) an SI joint fusion surgery to remove cartilage from her right SI joint, implantation of bone graft material and a cage, and insertion of a screw between the sacral and iliac bones; (ii) a second surgery a few days later to replace a screw used in the initial fusion; and (iii) a lumbar fusion surgery that involved removing disc material, implanting a cage and bone graft material, and inserting screws and rods.

In further support of their argument that the general damage award was abusively low, the Tripps cite *Gaunt v. Progressive Security Ins. Co.*, 11-1094 (La. App. 4 Cir. 6/8/12), 92 So.3d 1250 (one cervical surgery, one spine surgery, and one shoulder arthroscopy resulted in a $1.125 million general damage award to a plaintiff who incurred a permanent partial disability, permanent disfigurement, and a significantly altered lifestyle); *Logan v. Brink's, Inc.*, 09-0001 (La. App. 4 Cir. 7/1/09), 16 So.3d 530 (awarding $865,000 in general damages to plaintiff who underwent triple fusion surgery and a subsequent surgery for a bone infection at the site of the fusion surgery, and who could no longer perform his pre-accident work or engage in any of his pre-accident activities); *Baack v. McIntosh*, 19-657

---

[13] The general damage award in *Dufrene* consisted of $800,000 for past and future pain and suffering, $750,000 for past and future mental anguish, and $700,000 for past and future loss of enjoyment of life. 908 So.2d at 82. The plaintiff there was assessed with 10% comparative fault.

(La. App. 3 Cir. 7/29/20), 304 So.3d 881, *aff'd*, 20-1054 (La. 6/30/21), 333 So.3d 1206 ($425,000 general damage award for severe pain in left lower back, hip, thigh, and leg, resulting in disability and a detrimental alteration of his lifestyle, and requiring lumbar surgery with a recommendation for future SI joint fusion surgery); and *Collatt v. Boudreaux*, 19-103 (La. App. 3 Cir. 11/25/19), 2019 WL 6482247 (unpublished opinion) (appellate court increased general damage award from $180,000 to $400,000 for accident victim who endured 20 months of cervical and lumbar pain, resulting in a cervical fusion surgery).

In contrast, DG cites *Bellard v. American Cent. Ins. Co.*, 07-1335, 07-1399 (La. 4/18/08), 980 So.2d 654. In *Bellard*, the plaintiff had four surgeries, including a three-level cervical fusion, a lumbar fusion, and bilateral carpal tunnel release surgeries, incurring $334,040.60 in medical expenses. The plaintiff also suffered from emotional distress as a result of the accident, leading to a failed suicide attempt and treatment for depression. The trial court awarded $50,000 in general damages, which the Louisiana Supreme Court increased to $200,000. DG also points to *Meyer v. Tufaro*, 05-1110 (La. App. 4 Cir. 6/7/06), 934 So.2d 861, *writ denied*, 06-1705 (La. 10/6/06), 938 So.2d 83 (affirming jury award of $200,000 in pain and suffering and $50,000 for loss of enjoyment of life to plaintiff who required epidural injections and spinal fusion surgery, plus a second spinal surgery after the disc area became infected from the first surgery); and *Monte v. State Farm Mut. Auto. Ins. Co.*, 13-979 (La. App. 3 Cir. 5/21/14), 139 So.3d 1139 (affirming $200,000 in general damages to a plaintiff who had an interior cervical discectomy and fusion, followed by a cervical decompression and fusion, with $210,880.78 in past medical expenses and an ongoing need for pain management).

Having reviewed these cases that award general damages ranging from $200,000 to $2.25 million, and in consideration of the entire record in the present matter, we cannot say that the jury's $236,000 total general damage award was an

abuse of discretion. Mrs. Tripp's own testimony indicates that her condition has improved since her recovery from lumbar surgery, and the record contains little evidence to show that she is continuing to experience physical pain and suffering, mental anguish, or emotional distress. Accordingly, we decline to disturb the jury's awards of $200,000 for past and future pain and suffering and $36,000 for past loss of enjoyment of life.

The Tripps also argue that the jury erred in refusing to award damages for future loss of enjoyment of life. Loss of enjoyment of life refers to detrimental alterations to a person's life or lifestyle or the person's inability to participate in the activities or pleasures of life enjoyed prior to the injury. *McGee v. AC And S, Inc.*, 05-1036 (La. 7/10/06), 933 So.2d 770, 775. An award for loss of enjoyment of life is reviewed for an abuse of discretion. *Willis v. Noble Drilling (US), Inc.*, 11-598 (La. App. 5 Cir. 11/13/12), 105 So.3d 828, 845.

At trial, the jury heard testimony that Mrs. Tripp was doing much better, even if not 100% better, from both Mrs. Tripp and Mr. Tripp. Notwithstanding the Tripps' arguments to the contrary, we find neither an internal inconsistency nor an abuse of discretion in the jury's decision to award damages for past loss of enjoyment of life, but not for future loss of enjoyment of life.

As to future medical expenses, the plaintiff bears the burden of proving entitlement to an award for future medical expenses by a preponderance of the evidence. *Tamayo*, 150 So.3d at 470. To recover future medical expenses, the plaintiff must prove that these expenses will be necessary and inevitable. *Id*. A fact-finder may accept or reject the opinion expressed by an expert, in whole or in part. *Id.*

Dr. Fautheree testified that it was "highly likely" that Mrs. Tripp would require additional medical treatment, such as injections or possibly surgery in 20 years, to address the potential degeneration of the discs surrounding the site of her

current surgery. Mrs. Tripp testified that she "definitely would go forward" with the surgery if she needed it. Mr. Tripp testified that his wife was a lot better than she had been, but he said her back still bothers her some, and she is very cautious about her activities, because she "[j]ust doesn't want to have to have another surgery anytime soon."

Given the testimony of Dr. Fautheree and Mr. and Mrs. Tripp, the jury evidently either believed that Mrs. Tripp would not go forward with surgery in the future, even if it were deemed necessary, or they did not believe Dr. Fautheree's testimony that, more probably than not, future medical treatment would be required. As the factfinder, the jury can accept or reject, in whole or in part, any witness's testimony, including an expert witness. *Handy v. Owens Corning Corp.*, 18-491 (La. App. 4 Cir. 12/26/18), 262 So.3d 965, 969, *writ denied*, 19-153 (La. 3/18/19), 267 So.3d 90. Where there are two permissible views of the evidence, the jury's choice between the two cannot be manifestly erroneous or clearly wrong. *Rosell*, 549 So.2d at 844. Given the record evidence, we cannot say that the jury's refusal to award future medical expenses was erroneous.

Loss of consortium includes such elements as loss of service, loss of love and affection, loss of society and companionship, loss of sexual relations, loss of support, and loss of felicity or overall contentment and happiness. *Willis v. Noble Drilling (US), Inc.*, 105 So.3d at 846. While every personal injury tends to decrease the parties' overall happiness, it is the plaintiff who carries the burden of proving a definite loss on each element of damages. *Gradnigo v. Louisiana Farm Bureau Cas. Ins. Co.*, 08-1198 (La. App. 3 Cir. 3/4/09), 6 So.3d 367, 377. In *Gradnigo*, the appellate court could not say the jury was clearly wrong in failing to find a loss of consortium. Similarly, in *Willis*, this Court refused to find error in the jury's determination that the spouse of an employee exposed to mercury was not entitled loss of consortium damages, notwithstanding testimony from the employee

indicating that because of his injury, his relationship with his wife had deteriorated on many levels, including sexually. 105 So.3d at 846.

Here, Mrs. Tripp testified that the accident had affected their relationship because she did not want to be intimate when she was in pain. Mrs. Tripp further testified that her husband is "a jewel of a man" who took her to many doctor's appointments and helped her after her surgeries. Mr. Tripp testified that since his wife's accident, she was unable to do yard work, which he had taken over, and that he helped with the laundry. After each of her surgeries, Mr. Tripp helped Mrs. Tripp for approximately three months in and out of the shower, in and out of bed, and sitting on the toilet. Even if we may have reached a different result with regard to loss of consortium damages, we cannot say that the jury erred in refusing to award consortium damages in this case.

## DECREE

Finding no manifest error with regard to the jury's determination as to causation, no manifest error in its award of special damages, and no abuse of discretion in its award of general damages, the trial court's judgment entered on the jury's verdict is affirmed.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 24, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-CA-487

**E-NOTIFIED**

29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE TIMOTHY S. MARCEL (DISTRICT JUDGE)
HONORABLE LAUREN D. ROGERS (DISTRICT JUDGE)
GREGORY SAUZER (APPELLANT)      STEPHANNIE M. ENGLAND (APPELLANT)      STEPHEN C. RESOR (APPELLANT)
MARK D. PLAISANCE (APPELLEE)    SCOTT M. MANSFIELD (APPELLEE)

**MAILED**

DAVID A. THOMAS (APPELLEE)
ATTORNEY AT LAW
12345 PERKINS ROAD
BUILDING ONE
BATON ROUGE, LA 70810

MARCUS J. PLAISANCE (APPELLEE)
ATTORNEY AT LAW
POST OFFICE BOX 1123
PRAIRIEVILLE, LA 70769

AMY DUNN HOTARD (APPELLANT)
CARLINA C. EISELEN (APPELLANT)
ATTORNEYS AT LAW
365 CANAL STREET
SUITE 1710
NEW ORLEANS, LA 70130

BRAD W. CRANMER (APPELLEE)
COLLIN R. MELANCON (APPELLEE)
KELLEY R. DICK, JR. (APPELLEE)
ATTORNEYS AT LAW
404 EUROPE ST.
BATON ROUGE, LA 70802